FOWLER, APPELLANT, *v.* YOUNG ET AL., BOARD OF EDUCATION OF CITY OF YOUNGSTOWN, APPELLEES. (TWO cases.)

(Nos. 3004 and 3005—Decided April 24, 1945.)

*Messrs. Williams & Stanley,* for appellant.

*Mr. W. P. Barnum,* for appellees.
*Mr. C. J. Hoyt, amicus curiae.*

CARTER, J. The parties will be designated as plaintiff and defendants.

This action had its origin in the Court of Common Pleas of Mahoning county, Ohio, under and by virtue of the provisions of Section 7690-6 (now Section 4842-12), General Code.

Plaintiff alleges in her petition substantially as follows: That the defendants are the duly elected or appointed, qualified and acting members of the Board of Education of the city of Youngstown, Mahoning county, Ohio; that by an order of the Common Pleas Court of Mahoning county she was granted a continuing contract to teach in the schools in the city of Youngstown, the effective date thereof being the second day of September 1941; that on or about the eighteenth day of September 1942, she received notice from the board of education that it was its intention to cause the termination of her contract of September 2, 1941; and that the written communication further stated:

"I am further instructed to advise you that the grounds for such consideration are gross inefficiency and other good and just causes as hereinbefore more fully stated and which were the basis of the superintendent's failure to reappoint you in June 1941. These grounds include inability to maintain discipline either in your own classroom or in study hall, inability to make simple routine reports on time and accurately, inability to carry out simple directions of the principal as a supervisor of instruction, inability to handle any extra-curricular activity satisfactorily, and inability to command the respect of pupils."

Plaintiff further alleges that she requested she be

given a hearing as contemplated by Section 7690-6, General Code; that on the 15th day of September 1943, a hearing was had before the board; that on the 30th day of September 1943, she was notified by the board that the contract between the parties was terminated; that a record and transcript of testimony before the board was taken and transcribed; and that the action of the board in terminating plaintiff's contract is contrary to law and against the weight of evidence in the following respects. Then follows eight respects in which it is urged that the finding is contrary to law and against the weight of the evidence, to which reference will be made further on in this opinion. The prayer is that plaintiff be given an opportunity for the presentation of additional testimony, for an order *reversing the decision of the board of education,* and for an order commanding and requiring the board to reinstate this plaintiff under the provisions of her contract of September 2, 1941.

To this petition an answer was filed by the defendants, in which they admit that they are the duly elected, qualified and acting members of the Board of Education of the city of Youngstown, Mahoning county, Ohio; that by an order of the Common Pleas Court of Mahoning county plaintiff was granted a continuing contract to teach in the schools of the city of Youngstown as of the second day of September 1941; that plaintiff received a notice that it was the intention of the board to cause the termination of her contract; that a request was made that she be given a hearing as provided by law; that a hearing was conducted by the board and plaintiff was personally present, represented by counsel during the hearing; that plaintiff was notified of the termination of the continuing contract; and that a record of the testimony adduced be-

fore the board was taken and transcribed. Defendants then deny each and every allegation of fact in plaintiff's petition contained not admitted to be true, and allege that the board had jurisdiction to hear and determine the matters presented; that the charges preferred were in conformity with law; that the evidence received was proper and admissible; that the motion of plaintiff made at the close of all the evidence in the hearing was properly overruled; and that the board acted within its discretion and with good faith made its determination upon the charges.

On hearing in the Court of Common Pleas the following entry appears:

''This day the above cause came on for hearing upon the petition of plaintiff and answer of defendants thereto. Additional evidence having been offered and received, and the court, being fully advised in the premises, finds that the sole function of this court of appeal under General Code 4842-12 from an order of the board of education terminating a teacher's contract is to determine whether grounds for such termination were fairly and lawfully found by the board to have existed, and to have existed after the date the contract took effect; the board had before it the testimony of the teacher's superior, under whose supervision and observation she had been for fourteen (14) years; to evaluate her services as to efficiency he must be given the legal status of an expert witness; he gave the teacher a rating amounting to gross inefficiency and declared it as his opinion that such inefficiency was permanent; if permanent it necessarily was existent during the contract period terminated; the board had a legal right to believe this testimony and to base its decision, as it obviously did, thereon; this court has no power under the appeal statute to inquire into and find

as on an original hearing whether the grounds for termination existed; finding there was substantial legally competent evidence as a basis for the board's action, nothing remains for the court but to affirm the same.

"Wherefore, it is ordered, adjudged and decreed that plaintiff be and is hereby denied the relief as prayed for in her petition; and it is further ordered, adjudged and decreed that the finding and judgment of the Board of Education of the city of Youngstown be and is hereby affirmed. Plaintiff's motion for new trial, as filed herein, be and is hereby overruled."

Appeal is prosecuted to this court. There is no question that plaintiff was entitled to a continuing contract under the provisions of former Section 7690-1, General Code. That question has been adjudicated by an action in mandamus, and plaintiff was awarded by the board a continuing contract as of September 2, 1941. However, the board subsequent thereto, to wit on September 18, 1942, notified plaintiff that it contemplated terminating the contract. On September 15, 1943, a hearing was had by the board and it found from the evidence adduced that the contract should be terminated on the grounds that plaintiff was and is unable to maintain discipline, to carry out school routines on time and accurately, unable to carry out directions of principal and supervisors, unable to handle extra-curricular responsibilities, and unable to maintain the respect of pupils; that the exhausted and listless spirit which indicated inadequate physical strength for teaching and her emotional instability seem clearly to be prevalent now; that the inefficiency is gross in nature, and that the grounds set forth for the termination of the contract are such as clearly to show gross inefficiency and other good and just causes as before

set forth, all of which existed as of September 1, 1941, and have continued since that date.

Appeal was prosecuted from this finding to the Common Pleas Court, under and by virtue of the provisions of Section 7690-6. (now Section 4842-12), General Code, wherein by agreement of counsel additional evidence was presented. That finding was affirmed by the Common Pleas Court. There appear in the record two notices of appeal, one on questions of law filed on May 9, 1944, and one on questions of law and fact filed on May 10, 1944; both appeals being from the same judgment entered on April 27, 1944. However, the brief filed by counsel for plaintiff appears to be prepared on the theory of an appeal on questions of law, and we will so treat the appeal.

It is. stated in plaintiff's brief that the following are the questions involved for consideration and determination by this court, to wit: That the board of education is and was without jurisdiction to hear and determine the case for the reason that all the offenses charged occurred before the passage of the Teachers' Tenure Act, effective as to certain teachers on September 1, 1941, and that the board is estopped from inquiring into plaintiff's conduct prior to September 1, 1941; that plaintiff was never given opportunity to teach under the new contract which became effective on September 2, 1941; that there existed the same grounds for removal prior to September 1, 1941, under and by virtue of the provisions of Sections 7701 and 7708, General Code; and that there is a presumption of law that a teacher is competent after having taught five consecutive years.

As to jurisdiction, there are a number of stipulations found in the record not necessary to enumerate. Jurisdiction was challenged and objection was made

to the introduction of evidence. We are at a loss to understand this non-jurisdictional claim. The person and subject matter were within the jurisdiction of the board. The board might be in error in admitting certain evidence. However, such would not deprive the board of jurisdiction. If there was no competent evidence or evidence of probative value introduced, plaintiff would be entitled as a matter of law to a judgment of dismissal of the charges filed against her. Clearly, Section 4842-12, General Code, confers upon the board jurisdiction to hear and determine grounds for terminating a continuing contract. Unquestionably the board had original jurisdiction to hear and determine the particular charges filed in the case at bar. Whether the so-called offenses (which I prefer to call disqualifications) in the case at bar existed prior to September 1, 1941, and regardless of whether the teacher's disqualifications were challenged prior thereto under the provisions of Sections 7701 and 7708, General Code, in the latter's instance the school authorities might have been long suffering in their attitude toward the plaintiff and have felt that, in the interest of the school, removal should be effected now due to accumulation of grievances. Jurisdiction may be defined as power given by law to hear and decide controversies. We think the board had undoubted jurisdiction to hear and determine the charges.

As to the disqualifications charged having occurred before the passage of the Teachers' Tenure Act, a number of cases are cited by counsel for plaintiff wherein it is claimed that such evidence cannot be considered. We will not enter into a discussion of all the cited cases, but will make reference to the latest pronouncement of our Supreme Court bearing on this question. It appears that counsel on either side cite

this case as authority in support of their respective claims. I refer to the case of *State, ex rel. Weekley, v. Young et al., Board of Education of City School District of City of Youngstown,* 141 Ohio St., 260, 47 N. E. (2d), 776, which was decided on March 24, 1943. That case deals with portions of the Teachers' Tenure Act. It was an action in which the relatrix, Bertha Weekley, was seeking a writ of prohibition to prevent this same board of education from proceeding with the hearing to terminate the continuing contract which existed between the board and relatrix. Judge Williams writing the opinion, in which the entire court concurred, stated:

"A board of education, under and by virtue of Section 7690-6, General Code, has full authority to terminate a contract of that character in every instance in which a statutory ground therefor is shown to exist subsequent to the effective date of the contract."

In the *Weekley case* the board failed and refused to enter into a continuing contract with the teacher pursuant to Section 7690-1 *et seq.,* General Code. A writ in mandamus was allowed by the Common Pleas Court, and accordingly on June 1, 1942, a contract was entered into as of September 2, 1941. However, relatrix was not assigned by the board to teach in the public schools of the district. The contention of the relatrix was that the charges contained in the written notice served upon her related to a period previous to the date the continuing contract became operative. The court in its opinion stated:

"The contention of relatrix that the charges contained in the written notice served upon her and quoted above relate to a period previous to the date the continuing contract became operative is not well founded. The notice recites merely that gross inefficiency

and other good and just causes, including inability to maintain discipline and lack of ability to plan work, together with a highly emotional state, all of which are alleged grounds for the termination of the contract, were also the reasons for the failure of the superintendent to reappoint her in June 1941. Clearly the written notice specifies disqualifications covering a period during the existence of the contract.''

The disqualifications urged in the case at bar are of a similar character as those specified in the *Weekley case,* and, on the basis of the reasoning found in the *Weekley case,* evidence substantiating the charges was competent. The written notice in the case at bar specified disqualifications covering a period during the existence of the contract, particularly in the light of the testimony of the principal of the school under which plaintiff taught for many years, wherein he testifies that the disqualifications were of a permanent character and that these disqualifications not only existed prior to the entering into of the continuing contract, but in his judgment still are existent. Gross inefficiency if existent after the date the contract took effect would warrant such termination even though the employed teacher never taught under that particular contract. Such is the holding of the court in the *Weekley case.* One can readily conceive of a situation where a contract could not be terminated upon ground occurring prior to the effective date of the contract. However, these charged disqualifications are of such a character that according to the evidence they exist now and did exist subsequent to the entering into of the continuing contract. We think the Supreme Court in the *Weekley case* disposes of the question raised that the teacher never taught under the continuing contract. Such would not prevent termination.

We also think the Supreme Court in the *Weekley case* made disposition of the question of estoppel as urged under the provisions of Section 7701, General Code, wherein the court stated:

"In our judgment the respondents are not estopped because grounds of dismissal existed during the period of the prior contract. When the continuing contract was entered into, the provision in Section 7690-6, General Code, as to grounds for termination or suspension of a contract, was read into and became a part of the contract as made. *Palmer* v. *Tingle,* 55 Ohio St., 423, 45 N. E., 313. To hold otherwise would nullify the statute and defeat one of its purposes. So the very agreement of relatrix of itself would prevent the operation of estoppel."

The court also held:

"The judgment in mandamus, likewise, could not on the theory of former adjudication or *res judicata* bar the right of the respondents to terminate relatrix's present contract on statutory grounds."

In the *Weekley case* the court also held:

"The respondents have jurisdiction to proceed to determine the charges, and the statute affords to the teacher, if aggrieved, a remedy that is full, adequate and complete."

As to the evidence supporting the charges, it would serve no useful purpose to quote the evidence as disclosed by the record. There were before the board and the Common Pleas Court the statement of Dr. Harvey, the cross-examination of plaintiff, and the testimony of Howard W. Phillips, principal under whom plaintiff taught for many years. The rating sheets are in evidence and indicate the evaluation of plaintiff's rating as a teacher according to Mr. Phillips. These evalua-

tions as disclosed are certainly far below satisfactory ratings required. In the light of that testimony the board could very properly terminate the contract under the charges filed, and the Court of Common Pleas was not in error in holding that there was substantial legal competent evidence for the board's action in terminating the contract.

It is urged also that a presumption arises that a teacher, having taught five years, is presumed competent. Assuming such to be true, such is not a conclusive but a rebuttable presumption. We think that any presumption arising as urged has been met and overcome by evidence as disclosed by the record. At least such was a question for the board.

Now it is urged that the testimony of the witness Phillips was incompetent for the reason that such testimony was an answer to the identical question the board was called upon to answer. In this we cannot concur. Teaching is an art as well as a profession and requires a large amount of preparation in order to qualify one in that profession. The ordinary layman is not versed in that art, neither is he in a position to measure the necessary qualifications required for the teacher of today. In our judgment this information can be properly imparted by one who is versed and alert in the profession and aware of the qualifications required.

Rogers on Expert Testimony (3 Ed.) in the introductory remarks of that work states at page viii:

"The testimony of the expert is admitted upon the theory that in the particular case, the issue is such that the jurors are not competent to draw their own conclusions from the facts without his aid. The purpose of his testimony is, then, to enlighten the jurors

as to the significance of the facts involved in the inquiry and thus to aid them in reaching correct conclusions. The line of demarcation between matters that fall within the knowledge of mankind generally and matters that are the subject of special and peculiar knowledge cannot, from the nature of things, be accurately described. The one of necessity shades into the other, and though the extremes are readily determinable, appellate courts are fairly unanimous in vesting the judge with a measure of discretion whether he will or will not admit opinion evidence in cases which fall within the doubtful zone.''

We think there was no abuse of discretion in permitting the witness Phillips to testify.

Further, we might suggest that there is other evidence in the record in addition to the testimony of Mr. Phillips which would amply justify the board's finding and affirmance by the court. I speak of the rating record, to wit the required standards and the lack of qualifications to measure up to that standard.

There is, therefore, sufficient competent evidence outside the testimony of Phillips which would justify this action by the board.

For this reason, however, we think the principal, Phillips, with the years of experience possessed by him can be classed properly as an expert in the teaching profession, and is in a similar position as a doctor in the medical profession. His testimony was not incompetent and certainly was an aid to the board and to the court in arriving at their respective conclusions.

While this case was pending in this court, C. J. Hoyt, an attorney of the Mahoning county bar, who appears to be interested on behalf of some clients involving similar questions, sought permission to appear as *amicus curiae*. The court permitted such appearance, and

thereupon he filed a rather elaborate brief dealing particularly with the conclusions reached by the Common Pleas Court as to the functions that court on appeal was called upon to perform. The Court of Common Pleas permitted additional evidence to be introduced, and held that his sole function on appeal under Section 4842-12, General Code, was to determine whether grounds for such termination were fairly and lawfully found by the board to have existed and to have existed after the date the contract took effect. The Common Pleas Court held also that the testimony of the principal, Phillips, must be given the status of an expert witness and found that the rating which he had given plaintiff amounted to gross inefficiency. The court further held that the testimony was to the effect that the inefficiency was permanent and by reason thereof it necessarily was existent during the contract period terminated; that the court on appeal had no power under the appeal statute to inquire into and find as on an original hearing whether the grounds for termination existed; and that, since there was substantial legally competent evidence as a basis for the board's action, nothing remained for the court but to affirm same.

It is from the conclusion of the trial judge that he had no power to consider the matter *de novo* and that his sole function was to determine whether the action of the board was fair and lawful that counsel *amicus curiae* claims the holding was not proper and was erroneous. Such counsel questions also the holding of the court that the principal's testimony was competent. He claims that the appeal provided for teachers under the Teachers' Tenure Act contemplates an appeal *de novo;* that additional testimony may be offered and the court is bound to receive it; and that the court thereupon makes an original determination as

to whether the contract should be terminated regardless of, and independent of, the board's finding. In other words, the claim is made that the court is substituted in the place of the board on the appeal and hears same as though there had been no prior hearing or determination.

·As to the competency of the testimony introduced, we have already made disposition of that question, heretofore in this opinion.

As to the right to hear additional testimony on appeal, the statute provides that the Common Pleas Court shall examine the transcript and record of the hearing before the board of education and shall hold such additional hearings as it may deem advisable and may consider other evidence. in addition to such transcript and record. Unquestionably the court is authorized to hear additional evidence on appeal. Such was done in this case. We are frank to say that just what sort of hearing is contemplated on an appeal under this section has given us some trouble, and considerable time has been spent in trying to reach a conclusion reasonably satisfactory. We have many administrative boards in the state of Ohio exercising legislative and executive functions and possibly *quasi*-judicial functions, and the Legislature creating these various boards has fixed the procedure to be followed in original hearings before the administrative boards and on appeal. There is considerable variance in the procedure to be followed on original hearings before the boards and on appeals from the findings of the various administrative boards. Therefore the holdings of the courts with respect to the procedure to be followed in certain instances under the various statutes are not always helpful in determining the *modus operandi* to be followed in any particular instance.

We might observe that there is grave doubt as to whether the questions raised by counsel *amicus curiae* in this case, *if such raise a constitutional question,* can be raised at all due to the fact that the plaintiff has herself invoked this statute on her appeal from the finding of the board. It appears to us that it is rather novel that one may invoke a statute, seek its protecting power, and after a decision unfavorable attack the very statute invoked. Neither was the constitutionality of the statute attacked before the board nor was it challenged in the Common Pleas Court, and it is raised for the first time in this court. However we are not treating the question raised as a constitutional one but one of construction and application. There are some cases holding that the constitutionality of a statute may be attacked even upon appeal from a finding by an administrative board. It appears to us that the question raised must be determined through and by a construction of the statute in question which permits the appeal.

What sort of an appeal did the Legislature contemplate in the enactment of Section 4842-12, formerly Section 7690-6, General Code? That section provides in part:

"* * * Any teacher affected by an order of termination of contract shall have the right of appeal to the Court of Common Pleas * * *. Such appeal shall be an original action in said Common Pleas Court and shall be commenced by the filing of a petition against such board of education, in which petition *the facts shall be alleged upon which the teacher relies for a reversal or modification of such order of termination of contract.* Upon service or waiver of summons in said appeal, such board of education shall forthwith transmit to the

clerk of said Common Pleas Court for filing a transcript of the original papers theretofore filed with said board and a certified transcript of all evidence adduced at the hearing or hearings before such board, whereupon the cause shall be at issue without further pleading and shall be advanced and heard without delay. The Common Pleas Court shall examine the transcript and record of the hearing before the board of education and shall hold such additional hearings as it may deem advisable, at which it may consider other evidence in addition to such transcript and record.'' (Italics ours.)

The section further provides:

''Upon final hearing, the Common Pleas Court shall grant or deny the relief prayed for in the petition as may be proper under the provisions of law in accordance with the evidence adduced in the hearing. Such an action shall be deemed to be a special proceeding within the purview of Section 12223-2 of the General Code and either the teacher or the board of education may appeal therefrom.''

With the provision in the statute that the facts shall be alleged upon which the teacher relies for reversal or modification of the order of termination of contract it appears to this court that it was the intention of the Legislature, which is an important matter to consider, that the Court of Common Pleas shall examine the transcript and record of the hearing before the board, may consider also additional evidence taken in that court, and thereupon consider all of the testimony in reaching its conclusions as to whether the finding of the board should be reversed or whether there should be some modification of the order. The statute, therefore, provides for a judicial review of the board's action. Judicial review does not necessarily mean trial *de*

*novo.* Surely if the Legislature had intended that this was to be a trial *de novo* there would be no necessity for making provision for reversal or modification. A trial *de novo* connotes an examination of testimony and an independent finding made as fully as though the action was originally instituted in that court, in which event it would be immaterial what errors were committed in the hearing before the board. Also it would be immaterial what the findings of the board were.

What are the functions of the trial court under the provisions of that section? On what grounds may the Common Pleas Court reverse or modify the finding of the board? The statute is silent on that question. Ordinarily the court on appeal from findings of fact by an administrative board will not weigh the evidence, but will look to the record to determine whether there is evidence of probative value or sufficient competent evidence to substantiate the board's finding; if so, the appellate court will not disturb that finding.

We think the court in this case had the power and authority after consideration of all the evidence to reverse the board's action on the ground that its finding was against the manifest weight of the evidence, for admission of incompetent evidence if prejudicial to plaintiff, or for any other good and proper reasons which were prejudicial to plaintiff; and the court may, where the evidence warrants such action, modify the board's finding, or the court may affirm, which was done in the case at bar on appeal.

The statute provides further that upon final hearing the Common Pleas Court shall grant or deny the relief prayed for. A glance at the prayer of the petition of plaintiff discloses the relief sought was that of reversal of the action of the board. Plaintiff was

not entitled to a trial *de novo*. She has had a judicial review of her case.

The remaining question left for consideration is: Did the Common Pleas Court on appeal apply this statute too narrowly? As above indicated the court held that his only function was to determine whether grounds for such termination were fairly and lawfully found by the board to have existed. The entry of the court is to the effect that after consideration of all the evidence there should be no reversal or modification of the board's order of termination and then that order is affirmed. The court refused to reverse the order. In other words, the court held the evidence disclosed that the board's action was justifiable, not contrary to law or against the manifest weight of the evidence, but supported by legally sufficient evidence; denied the prayer for reversal and further found he had no right to hold trial as on appeal *de novo*, that is to substitute the court in the place of the board. We concur in that conclusion of the trial court.

Judgment of the Common Pleas Court affirming the finding of the board of education is affirmed.

We might refer counsel to a very able discussion of the subject "Public Administrative Law" with a large array of supporting citations in 42 American Jurisprudence, 281 *et seq.*

*Judgment affirmed.*

NICHOLS, P. J., concurs in the judgment and syllabus.

PHILLIPS, J., concurs in paragraphs two, three, four and five of the syllabus, but dissents from paragraph one of the syllabus and from the judgment.