**YACKSHAW, Appellant,**

v.

**JOHN CARROLL UNIVERSITY BOARD OF TRUSTEES.**

[Cite as *Yackshaw v. John Carroll Univ. Bd. of Trustees* (1993), 89 Ohio App.3d 237.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62289.

Decided June 24, 1993.

238

*Wuliger, Fadel & Beyer, William Fadel* and *Kathleen M. Sasala,* for appellant.

*Jones, Day, Reavis & Pogue, John M. Newman, Jr.,* and *Richard I. Werder, Jr.; Weston, Hurd, Fallon, Paisley & Howley* and *James L. McCrystal,* for appellee.

PATRICIA A. BLACKMON, Judge.

This appeal requires us to decide several issues: whether a tenured professor at a private university has a right to a trial *de novo* on his breach-of-contract claim or whether review is limited to the record of the university's hearing to terminate his contract; and whether there are genuine issues for trial on his claim for negligent termination and negligent infliction of emotional distress. Dr. Robert R. Yackshaw, plaintiff-appellant, timely appeals the decision of the Cuyahoga County Court of Common Pleas granting of summary judgment to John Carroll University, defendant-appellee, on each of his claims. He assigns the following errors for our review:

"I. The trial court erred in granting summary judgment to JCU on Dr. Yackshaw's breach of contract claim inasmuch as he was entitled to a trial *de novo* to litigate that claim in court.

"II. The trial court erred in granting summary judgment to JCU on Dr. Yackshaw's tort claims which present legitimate questions of fact for the jury to decide.

"A. JCU's failure to provide Dr. Yackshaw all of the procedural rights to which he was contractually entitled presents significant issues of fact which should be decided by a jury.

"B. Dr. Yackshaw's claim of discharge in violation of public policy presented a good faith argument for the creation of another exception to the doctrine of employment at-will which should have gone to the jury.

"C. Dr. Yackshaw's claim of negligent infliction of severe emotional distress is cognizable in Ohio and was not appropriate for summary judgment on the facts of this case.

"III. The trial court erred in denying Dr. Yackshaw's motion for partial summary judgment inasmuch as authorship of the letter in question does not constitute moral turpitude as a matter of law."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we find that the assignments of error are not well taken, and we affirm the decision of the trial court. The apposite facts follow.

Dr. Robert R. Yackshaw, plaintiff-appellant, was a tenured professor in the English Department at John Carroll University, defendant-appellee, for thirty years. Yackshaw renewed his contract of employment with the university on December 15, 1986 for the 1987–1988 term; and it was understood that the Faculty Handbook construed and interpreted the terms of his contract.

The handbook provided that either retirement or separation constituted reason for termination of a tenured professor's employment. Separation occurred only by resignation, mutual agreement, non-reappointment, discontinuance of the department or program, financial exigency, medical reasons, and dismissal for cause. Dismissal for cause included professional incompetence, moral turpitude, gross neglect of duty, or public criticism of Catholic dogma. The president of the university was required to give a tenured professor fair warning prior to dismissal for cause except in cases involving moral turpitude, which required immediate action. Faculty Handbook at 22. Immediate action involved a determination for cause, which mandated certain procedural safeguards.

The handbook set forth the following procedure:

" * * * an informal examination by a Hearing Committee which decides if there was adequate cause to begin formal proceedings. If formal proceedings are recommended, the President shall institute them by notifying the faculty member in writing of the intention to terminate the contract and the reasons for such

action. Thereafter, a Faculty Board of Review shall be assembled to recommend whether or not the faculty member shall be dismissed. After conducting hearings, the Board of Review shall issue its recommendation. The President transmits the Board's report to the Board of Trustees who may choose to review the case itself, or they may either accept or object to the recommendation of the Board of Review. The Board of Trustees has the right of final decision." Faculty Handbook at 22–24.

These rules and regulations were followed by the university when it accused Yackshaw of moral turpitude, and those events are chronicled below.

John Carroll University's former President, Father Thomas O'Malley, received a typed anonymous letter sometime in November 1986. The typed anonymous letter charged that several members of the faculty in the English Department were guilty of sexual harassment of students, mental illness, improper sexual conduct with students, and homosexuality. The university immediately focused its attention on who authored the letter. Its administrators concluded that Yackshaw probably wrote the letter because of his history of similar behavior. On July 22, 1987, Yackshaw received a letter from the university's Academic Vice President, Father Michael Lavelle, who accused Yackshaw of writing the letter. Yackshaw denied the allegations and rejected the university's compromise. Thereafter, the university proceeded to terminate Yackshaw, which action under the contract mandated a hearing.

After a screening by the hearing committee, the matter was referred to the Faculty Board of Review. The Faculty Board of Review was comprised of six members who were chosen from an existing pool as stated in the contract, and they conducted a hearing for six days. During that time, an observer from the American Association of University Professors attended the hearings. Fifteen witnesses—eight on behalf of the university, seven on behalf of Yackshaw—were called and subject to examination. Both the university and Yackshaw were represented by counsel. Forty-five exhibits were introduced and a nine-hundred-page transcript was compiled. Both the exhibits and the transcript were attached to the university's motions for summary judgment. The witnesses' testimony was rendered under oath and was detailed in the transcript.

After the evidentiary hearing, the Faculty Board of Review ruled four to one that the evidence showed clearly and convincingly that Yackshaw authored the letter and that the sending of the letter constituted moral turpitude warranting his dismissal.

The university's board of trustees accepted the recommendation to terminate and Yackshaw was notified by letter on August 15, 1988 of the termination effective August 31, 1988.

We accept the factual findings by the Faculty Board of Review; therefore, it is unnecessary to detail the underlying charge and restate the evidence adduced at the Faculty Board of Review's hearing. It is sufficient if the trial court reviewed the record and determined that there was substantial evidence to support Yackshaw's termination. *Gutowski v. John Carroll Univ.* (Nov. 14, 1979), N.D. Ohio No. 72–1179, unreported.

■ We look first to the familiar law that defines summary judgment under Civ.R. 56. Civ.R. 56 mandates that an appellate court review the record of the trial court in the light most favorable to the party opposing the motion and determine as a matter of law that there are no genuine issues of material fact to be tried. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 522 N.E.2d 477. Summary judgment is appropriate only if reasonable minds could find against the party opposing the motion. *Id.* This standard dictates that the trial court not weigh the evidence but determine if there is a genuine issue for trial. *Id.*

■ Yackshaw argues that summary judgment is inappropriate in this case and that a *de novo* determination is required. Furthermore, he argues that we should not seek guidance from the administrative agency case law in this area because of the fact that a private university is not an administrative agency that is clothed with judicial, trial-like authority. We disagree. Even though we, too, are hesitant to equate a private university's hearing powers to that of a statutorily mandated administrative body, we do find rationale and guidance from the standard of review adopted by administrative agencies, especially when the involved parties have bound themselves contractually. In this case, the contract of the parties mandated both procedural and substantive due process safeguards. Over a period of six days, the Faculty Board of Review heard testimony from fifteen witnesses—eight for the university, and seven for Yackshaw. Over forty-five exhibits were introduced and reviewed, resulting in nine hundred pages of transcript. At the insistence of Yackshaw, who participated in the hearing, an observer from the American Association of University Professors attended all six days of the hearings. At the conclusion, the Faculty Board of Review in a four-to-one decision concluded that the evidence clearly and convincingly pointed to Yackshaw as the author of the anonymous acerbic letter.

In *Gutowski,* the court adopted the administrative agency standard of review in cases of this nature and held that it is sufficient to determine if the termination is contractually and constitutionally permissible and if there is substantial evidence in the record to support the university's decision to terminate. We concur with *Gutowski's* approach and hold that summary judgment was properly issued in this case.

In *Gutowski*, there are some factual similarities to the case *sub judice*. The university and its rules and regulations are the same. A tenured professor was terminated, although for different reasons, and the review process is the same. Additionally, the *Gutowski* holding is historically sound and it seeks to preserve the contractual intent of the parties, which is what the trial court did in this case.

The trial court stated in its order that there was "plenty of evidence" to justify the firing and it was not going to substitute its judgment unless the university administration had acted fraudulently, in bad faith, abused its discretion, or infringed on constitutional rights. However, Yackshaw argues that the cases cited by the trial court are inapplicable. This argument begs for a rigidity unnecessary for this court to bind itself to. Although the cases cited by the trial court involved review of state universities' and colleges' hiring and tenure decisions, the result was to limit the review of the trial court to the record, which we agree with and adopt.

At this point, it is important to note that historically Ohio courts have defined trial *de novo* as allowing new evidence, if offered, and requiring that the trial court re-examine the facts found by the administrative body. *Fowler v. Young* (1945), 77 Ohio App. 20, 32 O.O. 298, 65 N.E.2d 399. Moreover, the prevailing view has been to confine a court of the second instance to questions affecting jurisdiction of the body, regularity in the proceedings, and substantively to confine the review to whether there was substantial evidence in the record to support the findings, or whether the determination was arbitrary, oppressive, unreasonable, fraudulent, or under an erroneous theory of law. *Id.* We find rationale in both *Fowler* and *Gutowski* because both cases lead to the sound value of honoring the parties' contractual agreement as well as giving finality to the factfinding process as contemplated by the terms of the contract; to do otherwise would make the parties' contracts worthless and reward disputation.

We come now to Yackshaw's argument that *McConnell v. Howard Univ.* (C.A.D.C.1987), 818 F.2d 58, should be followed and not *Gutowski*, which Yackshaw argues should be discarded for its own enigmatic precepts. We disagree. The prevailing view, at least on the federal level, is that judicial review should be limited. *McConnell* seems to be the obscure one. In any event, in the case *sub judice*, the trial court reviewed the record and determined that the evidence substantially established the fact that Yackshaw authored the letter and was guilty of moral turpitude, which constituted cause for termination. In *McConnell*, this process seemed absent from the district court's conclusions. Additionally, the *McConnell* court appeared preoccupied, and rightfully so, with the failure of the university to honor the contract. In *McConnell*, the court held that the reasonableness of the university's actions is relevant only insofar as the actions are consistent with the parties' contract. This analysis leads us to conclude that

the *McConnell* court was creating an exception to the traditional rule of deference to administrative agencies or bodies as opposed to an absolute rejection of that tenet of law. We reach this conclusion because it appeared that the court in *McConnell* was seeking to grant *de novo* review when the university failed to honor its contract and the evidence did not substantially support the facts concluded by the university's review board. *McConnell* does not outright reject a limited review when there are no facts in dispute. Regardless of the spin that is placed on *McConnell,* this court believes that the better approach is outlined in *Gutowski,* which is that when the parties' contract defines the procedure to be used to determine termination of a tenured professor's contract at a private university, the standard of review is whether the contract and the United States Constitution have been adhered to, and whether there is substantial evidence in the record to support the termination.

The trial court in the case *sub judice* stated in its order that the "decision to terminate was supported by 'plenty of evidence' adduced at said hearing." We have reasonably concluded that this finding by the trial court was based on its review of the record, whereas in *McConnell* it was reasonable to conclude that the district court had not reviewed the record. The fact that the trial court in the case *sub judice* did not use the language "substantial evidence" does not cause us any discomfort or require us to remand this case for such a determination. We are satisfied with the record in this case.

Consequently, Yackshaw's first assignment of error is overruled.

Yackshaw argues in his second assignment of error that his tort claims presented legitimate questions of fact for the jury to decide. He argues that fact questions were raised with respect to whether the university provided him with all applicable procedural rights, whether his claim of discharge in violation of public policy presented a possible exception to the employment-at-will doctrine, and whether his claim of negligent infliction of severe emotional distress was cognizable in Ohio.

■ To the extent that it pertains to alleged procedural defects, Yackshaw's second assignment of error is without merit. As discussed in our evaluation of his first assignment of error, we find that the university did not deny Yackshaw's procedural rights under his contract. We also reject Yackshaw's claim that his dismissal violated public policy. In *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 234, 551 N.E.2d 981, 986–987, the court stated that Ohio would recognize a public-policy exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute. See, also, *Painter v. Graley* (1992), 84 Ohio App.3d 65, 616 N.E.2d 285, motion to certify overruled (1993), 66 Ohio St.3d 1485, 612 N.E.2d

1241, rehearing granted and motion to certify allowed (1993), 67 Ohio St.3d 1420, 616 N.E.2d 504.

Yackshaw has not argued that his discharge for cause violated any statute. Instead, he claims that there is a material issue of fact as to whether the university terminated him in bad faith and with malice. Yackshaw asks this court to extend the *Greeley* exception to cover "other public policy violations of equal severity." The *Greeley* court stated that exceptions to the employment-at-will doctrine may be required for reasons other than violations of a specific statute, but only for actions of "equally serious import as the violation of a statute." *Id.*, 49 Ohio St.3d at 235, 551 N.E.2d at 987. His contract clearly provided that he could be discharged for cause. He has not produced sufficient evidence to support his claim that his discharge was motivated by bad faith and malice. We do not find that Yackshaw's discharge amounted to a sufficiently clear public-policy violation to warrant the creation of a cause of action. See *Greeley*, 49 Ohio St.3d at 233, 551 N.E.2d at 985–986, citing *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114.

■ We now turn to Yackshaw's claim for negligent infliction of emotional distress. In order to prevail on a claim for negligent infliction of emotional distress, the defendant's actions must be extreme and outrageous. *Dillon v. Warrensville Hts.* (Dec. 19, 1991), Cuyahoga App. No. 61782, unreported, at 9, 1991 WL 271460. A plaintiff need not have suffered a contemporaneous physical injury. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759. However, the defendant's actions must be extreme and outrageous. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. In order to be compensable, the distress must be severe and debilitating. *Binns v. Fredendall* (1987), 32 Ohio St.3d 244, 513 N.E.2d 278.

We find no genuine issue of fact raised by Yackshaw's negligent infliction of emotional distress claim. Yackshaw has not presented sufficient evidence that the university's conduct was extreme and outrageous or that his claimed emotional injuries are severe and debilitating. Yackshaw's second assignment of error is not well taken.

■ In his third assignment of error, Yackshaw argues that he is entitled to summary judgment on his breach-of-contract claim because authorship of the unsigned letter does not constitute moral turpitude as a matter of law.

Yackshaw's argument in support of his motion for summary judgment amounts to another request for review of the Faculty Board of Review's finding. In its finding, the board stated that Yackshaw had written the unsigned letter and that authorship of the letter constituted moral turpitude. Having rejected Yackshaw's argument that he is entitled to a review of the board's determination, we uphold

the trial court's denial of his motion for partial summary judgment. Yackshaw's third assignment of error is without merit.

*Judgment affirmed.*

JOHN F. CORRIGAN, P.J., and NUGENT, J., concur.