BRAHIM, Appellant,

v.

OHIO COLLEGE OF PODIATRIC MEDICINE et al., Appellees.

[Cite as *Brahim v. Ohio College of Podiatric Medicine* (1994), 99 Ohio App.3d 479.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66720.

Decided Dec. 27, 1994.

480

*Valore, Moss & Kalk, Stephen W. Gard* and *Daniel L. Kalk,* for appellant.

*Weston, Hurd, Fallon, Paisley & Howley, John S. Kluznik, Raymond S. Ling* and *John Reilly,* for appellees.

SPELLACY, Judge.

Plaintiff-appellant Dr. Feisal Brahim appeals from the entry of summary judgment for defendants-appellees Ohio College of Podiatric Medicine ("OCPM"), Thomas Melillo, president, William Todd, vice-president and dean of academic affairs, and Karen Ondrick, chairperson of the basic science department. Brahim raises four assignments of error:

"I. The trial court erred in granting summary judgment for defendant Ohio College of Podiatric Medicine when the evidence clearly demonstrated that the tenured faculty employment of the plaintiff Feisal Brahim was terminated in breach of the condition precedent procedural terms of plaintiff's written employment contract.

"II. The trial court erred in granting summary judgment for defendant Ohio College of Podiatric Medicine when, regardless of the applicable standard of review, the termination of plaintiff's faculty employment clearly violated the substantive 'good cause' provisions of plaintiff's employment contract and thus the termination was contractually impermissible.

"III. The trial court erred in granting summary judgment for the defendants when there were material issues of fact whether the termination of plaintiff's faculty employment was caused by the tortious fraud of the defendants.

"IV. The trial court erred in granting summary judgment for the defendants Melillo, Todd and Ondrick when there were material issues of fact whether defendants tortiously interfered with plaintiff's contractual rights."

I

A

Brahim brought this action for, among other things, breach of contract, fraud, and tortious interference with contract after OCPM discharged him from his

position as an anatomy professor. OCPM, Melillo, Todd, and Ondrick moved for summary judgment, which the trial court granted.

## B

OCPM employed Brahim, a faculty member since 1979, under a revolving contract incorporating a faculty handbook. The contract provides:

"1. GENERAL REQUIREMENTS: Faculty Member Shall:

" * * *

"(B) Maintain a pattern of personal, professional, moral and ethical conduct designed to reinforce the objectives and operation of the College, and not to bring discredit to himself/herself, the profession, or to bring * * * public embarrassment or criticism upon the College.

" * * *

"(D) Exhibit professionalism as an example in the training of professionals, including but not limited to professional integrity in fulfilling instructional, clinical, and/or administrative duties and responsibilities, professional behavior in relation to students, faculty, staff and clinic patients, and maintain internal and external attitudes and activities to maintain an environment of the highest professionalism at the College.

" * * *

"8. EXTENSION OF EMPLOYMENT AND TERMINATION:

" * * *

"(D) In the event faculty member violates any provision of this agreement, the College at its option, may terminate this Agreement and any subsequent Agreement after following the dismissal procedures set forth in the Faculty Handbook.

" * * *

"9. INTERPRETATION:

" * * *

"(D) The College's Faculty Handbook shall guide the interpretation of this Agreement. In the event a conflict arises on any item not specifically covered by the Faculty Handbook, then this Agreement shall govern."

The handbook provides:

"VIII. DISMISSAL PROCEEDINGS:

"Dismissal of a faculty member may occur only pursuant to the procedures set forth below, for adequate cause (see Section A.1–9).

" * * *

"A. Causes for Dismissal Based Upon Charges

"The following charges against a faculty member shall be grounds for a proceeding for dismissal:

" * * *

"2. Substantial, willful, and persistent neglect without justification of an essential institutional duty, validly prescribed by the College;

" * * *

"8. Failure to correct actions which provoked previous disciplinary sanctions.

" * * *

"B. PROCEDURES FOR DISMISSAL BASED ON CHARGES:

"1. When reason arises to question the fitness of a faculty member who has a revolving contract or whose annual appointment has not expired, the academic dean shall discuss the matter with him or her in a personal conference. If resolution of the matter does not occur, the Executive Committee of the Faculty Senate shall informally inquire into the situation and make a recommendation for resolution of the situation. If the President, after considering a Committee recommendation favorable to the faculty member, nevertheless decides to undertake a proceeding, action should follow the procedure set forth below. If there is agreement between the Committee and the President on proceeding further, grounds proposed for dismissal shall be jointly formulated by the President and the Committee. If there is disagreement, the President should formulate the statement.

" * * *

"5. The Hearing and Grievance Committee shall consider the grounds for dismissal previously formulated and the faculty member's response. If the faculty member has waived a hearing, the Committee shall evaluate all available evidence in making its recommendations.

" * * *

"16. Publicity about the case by the faculty members or the administration will be avoided insofar as possible, until a decision has been reached by the Board of Trustees.

" * * *

"17. The Committee may conclude that adequate cause for dismissal has not been established. It may recommend a lesser penalty, or it may find adequate cause for dismissal. The President and the faculty member shall be notified in

writing of the Committee's conclusions. The Committee shall respond in writing within ten (10) days."

On March 31, 1988, Brad Samojla, an OCPM anatomy professor, filed an unprofessional conduct complaint with Todd alleging Brahim disturbed his lab classes, criticized his course, and refused to provide advice. On the same day, Ondrick requested an investigation into Brahim's conduct. After Todd met with Brahim, Ondrick, and Samojla in an unsuccessful attempt to resolve the conflict, he referred the matter to the executive committee of the faculty senate.

On October 10, 1988, after holding hearings, the executive committee found that Brahim had improperly criticized Samojla and recommended that Brahim recognize his inappropriate behavior, apologize to Samojla, and refrain from further open criticism of Samojla's course. The executive committee found dismissal or further penalties unwarranted.

Melillo disagreed with the executive committee and formulated the following statement of grounds for dismissal:

"1. Soliciting negative student comment concerning the lower extremity anatomy instructor, Dr. Brad Samojla, during the early part of the 1987–1988 academic year.

"2. Taking, without permission of the instructor, various examinations from the lower extremity laboratory and classroom course, and soliciting negative student comment concerning the examination and the specific questions in them.

"3. Repetition of personal attacks upon a fellow faculty member despite my personal warning in 1985 that such conduct is not professional and ethical and therefore was unacceptable. Specifically, in 1985, Dr. Brahim engaged in a similar practice of negative comments toward another faculty member in his department. They were both ordered by me verbally to cease this type of activity permanently or there would be serious consequences of charges of unprofessional conduct. Now a scant 2½ years later, Dr. Brahim exhibits similar behavior in questioning a peer faculty member's teaching ability, and worse, soliciting students to complain about Dr. Samojla's teaching methods.

"4. Violation of General Requirements, Sections B and D of Faculty Contract, 1987–1988, and 1988–1989. Specifically, Dr. Brahim recently demeaned the College and the profession to a group of students by making negative comments about the students' educational experience and their ability to perform in a professional environment."

Later, at Brahim's request, Milello provided an additional statement concerning the grounds for dismissal:

"CHARGES 1 and 2:

"The particulars of these charges are as follows:

"On or about January, or early February, 1988, you solicited from students, and personally made, negative comments concerning fellow faculty member Brad Samojla, DPM.

"According to the Faculty Handbook, the administration is authorized to take action against any faculty member acting in such an unacceptable manner. Provisions for this administrative action are described under the general category of Professional Incompetence, Sections VIII A 1, 5, 8 and as further described under the section entitled Responsibilities to Colleagues, Section 3, page 5.

"Finally, these charges are substantiated in memos from Dr. Karen Ondrick and Dr. Brad Samojla to Dr. William Todd dated March 31, 1988, which are attached in the supporting documentation.

"CHARGE 3:

"The specifics of this charge against you are substantiated in the supporting documentation enclosed herewith, which references a previous incident of unprofessional conduct on your part against another of your colleagues in 1984–85. At that time I ordered both parties to cease and desist this unprofessional conduct. Dr. Iyer complied with that order and as demonstrated by your actions against Dr. Samojla, you have not done so.

"CHARGE 4:

"On the evening of November 30, 1988, following the OPMSA Holiday Party, several students were involved in or witness to discussions about the College and the profession of podiatric medicine. The tone of these discussions was negative and the remarks about the College, its administration and its students were at best, unflattering. The negative nature of these remarks is a direct violation of the Terms and Conditions portion of the Faculty Contract, specifically sections B and D. There are several signed statements by students in the supporting documentation which corroborate these remarks and the impact of them on the student body."

On July 3, 1989, the hearing and grievance committee issued the following report:

"Based upon the arguments of the parties, the testimony of the witnesses, the written documents and exhibits admitted and the final arguments of the parties, the Committee makes the following findings by a preponderance of evidence.

"1. That Dr. Brahim did openly criticize a fellow faculty member to students of the college on two separate occasions: once, in the Doctor's Inn and again outside of classroom 321.

"2. That Dr. Brahim in a Faculty Senate Meeting on April 5, 1989 engaged in unprofessional conduct by openly criticizing a faculty member as being unqualified.

"3. That Dr. Brahim at an OPMSA party attended by faculty and students, engaged in unprofessional conduct by arguing with a student at said meeting, in the presence of other students, over school issues and refusing to terminate the discussions despite the student's desire to do so.

"4. That Dr. Brahim despite receiving a warning on March 15, 1985 has presented a similar type of unprofessional behavior by openly criticizing another faculty member through the factual circumstances set forth in Paragraph 1–3 above.

"The Committee further finds that the conduct set forth above is violative of Section VIII. A.2 & VIII. A.8 of the Faculty Handbook and Section I.B. & I.D. of the Faculty Contract. The Committee finds that such conduct though serious does NOT warrant dismissal from the college.

"The Committee therefore recommends the following disciplinary action:

"That Dr. Feisal Brahim be demoted in Rank from Full Professor, Step 3 to Associate Professor, Step 5, with loss of pay commensurate with Rank for a period of one year. At the end of that time, he shall automatically be returned to Full Professor, Step 3, with appropriate change in salary."

Melillo, agreeing with the hearing and grievance committee's conclusion that Brahim violated Section VIII.A. of the handbook, but disagreeing with the recommended penalty, referred the matter to OCPM's board of trustees and requested Brahim's dismissal. After receiving position papers from Melillo and Brahim, the board of trustees discharged Brahim.

II

We address Brahim's first and second assignments of error together. In these assignments of error, Brahim contends the trial court erred when it entered summary judgment on his breach-of-contract claim because OCPM violated procedural and substantive terms of the contract.

Civ.R. 56 governs our review. *Buemi v. Mut. of Omaha Ins. Co.* (1987), 37 Ohio App.3d 113, 115, 524 N.E.2d 183, 186. In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, the court held that:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter

of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." See, also, *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 65–66, 609 N.E.2d 144, 145.

In *Yackshaw v. John Carroll Univ. Bd. of Trustees* (1993), 89 Ohio App.3d 237, 243, 624 N.E.2d 225, 229, we held that:

"When the parties' contract defines the procedure to be used to determine termination of a tenured professor's contract at a private university, the standard of review is whether the contract and the United States Constitution have been adhered to, and whether there is substantial evidence in the record to support the termination."

Brahim argues OCPM violated three procedural terms of the contract. Even viewing the evidence most strongly for Brahim, however, reasonable minds could only conclude that OCPM adhered to the procedural terms of the contract.

First, Brahim argues OCPM violated Section VIII.B.1. of the handbook because Todd, as academic dean, failed to hold a conference on, and the executive committee failed to inquire into, the November 30, 1988 holiday party incident, the April 5, 1989 faculty senate incident, and his failure to correct behavior for which he was warned in 1985. It was unnecessary to recommence the dismissal proceedings after the November 30, 1988 holiday party and April 5, 1989 faculty senate incidents because by the time they occurred it had become clear the matter would be submitted to the hearing and grievance committee. Further, the charge concerning Brahim's failure to correct behavior for which he had been warned was based on the conflict that Todd unsuccessfully addressed and the executive committee inquired into.

Second, Brahim argues OCPM violated Section VIII.B.5. of the handbook because the hearing and grievance committee based its decision on events omitted from the statement of grounds for dismissal formulated by Melillo. The only event considered by the hearing and grievance committee omitted from the statement of grounds for dismissal was the April 5, 1989 faculty senate incident. This incident, which occurred after Melillo formulated the statement of grounds for dismissal, merely provided additional evidentiary support for the hearing and grievance committee's conclusion that Brahim violated Sections VIII.A.2. and 8. of the handbook and that it was unnecessary for Melillo to amend the statement.

Third, Brahim argues the hearing and grievance committee's decision on a penalty was final. The contract and handbook, however, reveal that the final decision lay with the board of trustees. Section VIII.B.17. of the handbook provides that the hearing and grievance committee shall make a recommendation.

A recommendation is not a final decision. In addition, Section VIII.B.16. of the handbook prohibits publicity "until a decision has been reached by the board of trustees." Finally, the contract, which under its terms prevails over any issue not specifically covered in the handbook, provides that OCPM may terminate a faculty member after following the dismissal procedures set forth in the handbook.

■ Brahim argues OCPM violated substantive terms of the contract because it discharged him without "adequate cause." Even viewing the evidence most strongly for Brahim, however, reasonable minds could only conclude that substantial evidence supports the hearing and grievance committee's conclusion that Brahim violated Sections VIII.A.2. and 8. of the handbook.

Summary judgment, therefore, was proper.

Accordingly, Brahim's first and second assignments of error are not well taken.

### III

In his third assignment of error, Brahim contends the trial court erred when it entered summary judgment on his fraud claim.

Brahim argues OCPM, Todd, and Ondrick fraudulently induced him to begin employment and remain at OCPM by representing that he would be discharged only under the contract.

In *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus, the court set forth the elements for fraud:

"(a) a representation or, where there is a duty to disclose, concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance."

No evidence suggests that Melillo, Todd, or Ondrick made representations to Brahim concerning the contract. Further, we have found that OCPM properly discharged Brahim under the contract. No evidence, therefore, shows that OCPM made false representations. Summary judgment, therefore, was proper.

Accordingly, Brahim's third assignment of error is not well taken.

## IV

In his fourth assignment of error, Brahim contends the trial court erred when it entered summary judgment on his tortious interference with contract claim.

A "business interference" action is based on the principle that "one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another, is liable to the other for the harm caused thereby." *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219, 379 N.E.2d 235, 238. An action for interference with employment will not lie where "the act complained of is within the scope of a defendant's duties." *Anderson v. Minter* (1972), 32 Ohio St.2d 207, 213, 61 O.O.2d 447, 450, 291 N.E.2d 457, 461; see, also, *Phung v. Waste Mgt., Inc.* (1988), 40 Ohio App.3d 130, 133–134, 532 N.E.2d 195, 200.

Even viewing the evidence most strongly for Brahim, reasonable minds could only conclude that the acts complained of lay within Melillo, Todd, and Ondrick's duties. Summary judgment, therefore, was proper.

Accordingly, Brahim's fourth assignment of error is not well taken.

*Judgment affirmed.*

NAHRA, C.J., and WEAVER, J., concur.