*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0372p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LIVINGSTON CARE CENTER,

*Petitioner,*

*v.*

No. 03-3489

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

*Respondents.*

On Petition for Review of a Decision of the
Secretary of Health & Human Services.
No. A-03-7.

Argued: June 15, 2004

Decided and Filed: August 24, 2004[*]

Before: DAUGHTREY and SUTTON, Circuit Judges; COOK, District Judge.[**]

---

**COUNSEL**

**ARGUED:** Geoffrey E. Webster, Columbus, Ohio, for Petitioner. Sheila Ann Hegy, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF THE CHIEF COUNSEL, Chicago, Illinois, for Respondents. **ON BRIEF:** Geoffrey E. Webster, Eric B. Hershberger, Columbus, Ohio, for Petitioner. Sheila Ann Hegy, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF THE CHIEF COUNSEL, Chicago, Illinois, for Respondents.

---

**OPINION**

---

COOK, District Judge. Petitioner, Livingston Care Center ("Livingston") appeals the final decision of the Secretary of Health and Human Services ("HHS"), who determined that it had failed to comply with the Medicare participation requirement of 42 C.F.R. § 483.25(c) between April 20, 2001, and May 10,

---

[*] This decision was originally issued as an "unpublished decision" filed on August 24, 2004. On September 17, 2004, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

1

2001. This regulation requires skilled nursing facilities, such as Livingston, to provide a prescribed level of medical care and services for their residents' skin.

Before this Court is Livingston's petition for judicial review pursuant to 42 U.S.C. § 1320a-7a(e). On the basis of the record, we now affirm the entry of the summary judgment and deny Livingston's petition.

I.

Livingston is a skilled nursing facility in Dayton, Ohio. In order for a facility like Livingston to participate in and receive payments from the federal Medicare program and the Ohio Medicaid program, it must submit to random surveys by the Ohio Department of Health ("ODH") on behalf of the Centers for Medicare and Medicaid Services ("CMS"). *See* 42 C.F.R. § 488.20(a). These surveys are conducted to ensure that the inspected facility is fully complying with all of the participation requirements in 42 C.F.R. Part 483.

On April 16-20, 2001, ODH officials conducted its survey of the Livingston facility, and made the following observations with regard to five residents:[1]

Resident 83, a female resident, suffers from peripheral vascular disease and other ailments which place her at a high risk for pressure sores. Although this resident's plan of care specified that pressure relieving devices should be used on her bed and wheelchair, an ODH surveyor observed on April 16, 2001 that she had only a standard mattress and a wheelchair without any pressure relieving cushion. The surveyor also noted that Resident 83 had four pressure sores - on her left leg, right foot, right heel, and left buttock. Significantly, the pressure sore on this resident's left leg had apparently developed as a result of an immobilizer device that had been attached to her knee.

Resident 73 is an obese woman who required assistance for bed mobility. Inasmuch as she was frequently incontinent, her plan of care required the facility to employ reasonable hygienic observations, as well as appropriate changes of clothing and bed linens, every two hours. This dependency and incontinence placed her at additional risk for pressure sores and other forms of skin impairment. During the morning of April 18, 2001, an ODH surveyor found that she had developed a pressure sore on her right buttock. In addition, it was also noted that this resident was fed breakfast while her buttocks were moist with urine in a soiled bed. Neither the resident's state of cleanliness nor the conditions relating to her bed linen were changed for nearly a two-hour period after breakfast.

Resident 90, another female resident, was observed in bed and in a geri-chair without pressure relieving devices in direct contravention to her plan of care. Although she wore padded bed boots on both feet, her feet were not elevated. The surveyor also reported that this resident had two pressure sores: one on her right heel, and one on her right metatarsal.

Resident 1, a male resident, was observed wearing a right-heel cradle boot. On four separate occasions during the survey, he was observed to have been without any pressure relieving device as required by his plan of care. In addition, the ODH surveyor noticed a previously unidentified pressure sore on the top of his right foot that had been caused by an improperly fastened heel cradle boot.

Resident 20, a male resident, was observed without a pressure relieving device on his wheelchair despite having been (1) assessed as "at risk" for pressure sores and (2) given a plan of care that required the facility to provide him with a pressure relieving mattress and chair cushion. The ODH surveyors also observed a wound that was characterized by Livingston's staff as a pressure sore.

---

[1] Each resident has been identified throughout this litigation with a number in order to achieve anonymity and to protect his or her identity.

Based on these observations, CMS determined that Livingston was in violation of the participation requirement at 42 C.F.R. § 483.25(c), also known as "Tag F-314",[2] and assessed the facility with a civil monetary penalty of $500.00 per day starting April 20, 2001.

On May 11, 2001, the ODH, after conducting a follow-up survey, concluded that Livingston had become compliant with 42 C.F.R. § 483.25(c). Eleven days later, CMS issued a Notice of Imposition of Remedies ("Notice") to Livingston which outlined the basis for its imposition of a civil monetary penalty in the amount of $10,500.00 covering a period of twenty-one days of noncompliance (from April 20 to May 11, 2001).

Livingston challenged these allegations of non-compliance, as well as the imposition of the civil monetary penalty, by submitting a timely request for a hearing before an administrative law judge pursuant to 42 C.F.R. Part 498. On September 14, 2001, CMS filed a motion for summary judgment, contending that Livingston had failed to satisfy the participation requirements regarding the treatment of these five residents. Livingston filed a response in opposition, contending that genuine issues of material facts existed with regard to its alleged failure to substantially comply with the applicable federal regulations that govern pressure sores. Livingston also offered the declaration of Kinda Walden, a Certified Wound Ostomy and Continence Nurse, who challenged the credibility of the ODH surveyors and presented her own professional evaluations of the five residents whose medical care and treatment had been criticized.

On May 22, 2002, the administrative law judge granted CMS's motion for summary judgment without a hearing after determining that the undisputed material facts established Livingston's failure to satisfy the standards of 42 C.F.R. § 483.25(c). Notably, the administrative law judge did not agree with all of the ODH surveyors' observations, concluding that, for purposes of resolving this summary judgment issue, the "wounds" that had been observed on Resident 90's right heel, Resident 1's right foot, and Resident 20's right buttock were not pressure sores. Nevertheless, he determined that Livingston had evidenced a "pattern of failures" in providing appropriate remedial care relating to the prevention practices and subsequent treatment of its residents' pressure sores. J.A. at 44.

Livingston filed an appeal to the HHS Departmental Appeals Board ("DAB") on July 21, 2002. The DAB affirmed, concluding that (1) Livingston had failed to create a genuine issue of a material fact concerning the alleged violations, and (2) the evidence demonstrated that the treatment of the five residents by the facility was not in substantial compliance with the participation requirement of 42 C.F.R. § 483.25(c).[3]

II.

Although the rules governing long term care facilities in 42 C.F.R. § 498 do not provide for summary judgment proceedings, the HHS has promulgated guidelines that are utilized by its administrative tribunals. The DAB Civil Remedies Division's Procedures state, in part, as follows:

---

[2]This regulation reads as follows:

> (c) Pressure sores. Based on the comprehensive assessment of a resident, the facility must ensure that--
> (1) A resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable; and
> (2) A resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing.

42 C.F.R. § 483.25(c).

[3]This opinion of the DAB constitutes the final decision of the HHS. 42 C.F.R § 498.90(c)(1).

An in-person hearing (i.e., a hearing at which witnesses are called and testify) is not the only vehicle for the judge to hear and decide the case. If, after giving the parties the opportunity to present their views, the judge determines that there are no genuine issues of material fact, the judge might decide the case based on the undisputed facts and the applicable law.

Dep't of Health & Human Svcs., Dep't Appeals Bd., Civil Remedies Div., Procedures at 1.

This Court recently determined that the rule which allows administrative law judges to grant a summary judgment without an in-person hearing is legally enforceable. *See Crestview Park Care Ctr. v. Thompson*, No. 02-4084, 2004 WL 1432719, at *6 (6th Cir. June 28, 2004) (unpublished). Similarly, we are satisfied that the summary judgment procedure which was employed by the administrative law judge in this case was appropriate.

Requests for the entry of a summary judgment are reviewed on a de novo basis. *Greene v. Bowles*, 361 F.3d 290, 293 (6th Cir. 2004). All summary judgment proceedings are governed by Federal Rule of Civil Procedure 56. The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Rule 56(c) provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." In assessing a summary judgment motion, the judicial officer must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991). It is not the role of the judicial officer to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the judicial officer to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable [finder of the facts] could return a verdict for the nonmoving party." *Id.* at 248. Hence, the moving party may show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [they] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (citing *Anderson*, 477 U.S. at 252). Indeed, "[i]f the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

III.

Livingston argues, among other things, that the entry of a summary judgment for its alleged noncompliance under the Tag F-314 provision was erroneous because the administrative law judge improperly evaluated the evidence in favor of CMS. The parties have advanced their arguments in the context of the five patients, all of whom were observed by the ODH surveyors. Therefore, in our evaluation of the parties' respective arguments, we now turn to a discussion of those five residents.

A.          RESIDENT 83

Resident 83 suffers from peripheral vascular disease and other ailments which placed her at a high risk for pressure sores. It is also undisputed that the ODH surveyors observed three new pressure sores on her left buttock, left leg, and right foot. Livingston, however, argues in its brief that Resident 83's pressure

sores were "medically unavoidable."[4]  In support of this contention, Livingston cites Walden's declaration, in which she discussed the medical conditions that gave rise to the pressure sore on Resident 83's left leg and concluded that the resident's leg pressure sore was unavoidable.  J.A. at 164 (Walden Decl.). Significantly, however, Walden does not  challenge the ODH surveyors' observations with regard to the other two pressure sores on this resident.  Livingston also argues that Resident 83's medical condition forced it to make a "difficult medical decision" to treat the patient's leg with an immobilizer device despite potential harm to her skin in that area.  Pet'r Final Br. at 24.  However, the record indicates that Livingston did not address the pressure sore condition (which was observed as early as April 6, 2001) until at least ten days after the sore was first identified.  Thus, Livingston's argument that all of Resident 83's pressure sores were "medically unavoidable" must be rejected.

Next, Livingston maintains that the ODH surveyors incorrectly concluded that Resident 83 had a standard mattress.  In support of this argument, Livingston submits that the colors of the standard and pressure relieving mattresses are identical.  Hence, it contends that the accuracy of the ODH surveyors' critical commentary is highly questionable and, as such, this creates a genuine issue of a material fact which cannot be resolved by this application for dispositive relief.  Unfortunately for Livingston, this argument – standing alone – does not provide any support for its contention that Resident 83's mattress was pressure-relieving.  In fact, Alice Cox, a surveyor for the ODH, stated that a Livingston nurse, Karen Paxton, who accompanied her at all times during the survey, confirmed that this resident had been given a standard mattress.  Livingston does not challenge this assertion.

In summary, the undisputed facts demonstrate that Resident 83 (1) had two pressure sores, neither of which were "medically unavoidable," and (2) was given a standard mattress in violation of her plan of care.  Thus, the evidence shows that Livingston failed to comply with the participation requirement of 42 C.F.R. § 483.25(c).

B.     RESIDENT 73

According to the ODH surveyors, Resident 73 is an obese woman who was fed breakfast while lying in a urine soaked bed with a pressure sore on her buttocks.  In its opposition papers, Livingston initially states that the pressure sore on Resident 73's buttocks developed unavoidably as a direct result of her extreme obesity.  According to Walden, this resident was "so large and medically complicated, she could only sleep while lying on her back.  It is impracticable to prevent small and minor pressure areas caused by skin on skin contact from folds of flab on this resident's buttocks."  J.A. at 167 (Walden Decl.).

Livingston also takes issue with the ODH surveyor's observations that Resident 73 was fed breakfast while lying on a bed soaked with urine.  In its brief, Livingston maintains that it "had (and continues to have) serious disputes and concerns about the accuracy of those notes prepared by the surveyor and relied upon in her Declaration in support of CMS' Motion [for summary judgment] that allegedly concern this resident."  Pet'r Final Br. at 26.

Both of these arguments by Livingston were rightly rejected by the administrative law judge and the DAB.  Even if it is true, Walden's statement that the pressure sore on Resident 73's buttocks was medically unavoidable is without consequence.  Livingston was not cited because this resident had developed a pressure sore. Rather, the citation was issued because Livingston had failed to provide her with the proper standard of care.  It is undisputed that Resident 73's plan of care identified her as having a high risk for pressure sores because of her incontinence and total dependence on the nursing staff.  Livingston does not dispute that Resident 73's bed was covered in urine or that she was fed breakfast while lying in a urine-soaked bed.  This undisputed evidence runs directly counter to the resident's plan of care and the federal

---

[4]Under C.F.R. § 483.25(c), a facility will not be penalized if a pressure sore is identified as "medically unavoidable," unless the facility fails to provide services that are necessary for the prevention and healing of the pressure sore.

regulations which govern skin care. The surveyor's observations clearly indicate that Livingston violated 42 C.F.R. § 483.25(c) when it failed to treat and prevent Resident 73 from sustaining pressure sores.

Similarly, Livingston provides no support for its challenge to the credibility of the ODH surveyor's notes. Walden asserts that she "[has] serious disputes and concerns about the accuracy of those notes prepared by [the ODH Surveyor] Gilmore allegedly concerning this resident." J.A. at 166 (Walden Decl.). However, this conclusory statement, while expressing her concerns regarding the ODH surveyor's credibility, does not set forth any supporting evidence to contradict the surveyor's observations. Thus, we find that the undisputed facts relating to the treatment of Resident 73 indicate that Livingston did not comply with her applicable plan of care.

## C.    RESIDENT 90

The medical records for Resident 90 indicate the existence of two possible pressure sores: one on her right heel, and one on her right metatarsal. In his decision granting CMS's summary judgment motion, the administrative law judge accepted Livingston's assertion that the wound on Resident 90's right heel was not a pressure sore.

However, it is important to note that Livingston has presented no evidence to dispute the conclusion that Resident 90 had a pressure sore on her right metatarsal. In addition, this Court fully agrees with the conclusions of the administrative law judge and the DAB that Livingston had failed to provide the necessary treatment to this patient in violation of the Tag F-314 requirement.

In its brief and during oral argument, Livingston contended that it is being improperly sanctioned in the absence of any actual harm to Resident 90 and the other residents. We reject this argument for two main reasons. First, although the administrative law judge determined that the wound on Resident 90's right heel was not a pressure sore, he did not render a similar conclusion with regard to the wound on the patient's right metatarsal.[5]

Second, and more importantly, the regulations clearly state that evidence of actual harm is not a prerequisite for a finding of substantial noncompliance. 42 C.F.R. § 488.408 provides that Livingston, like every other skilled nursing facility, is subject to a monetary penalty if there are "[w]idespread deficiencies that constitute no actual harm with a potential for more than minimal harm but not immediate jeopardy; or ... [o]ne or more deficiencies that constitute actual harm that is not immediate jeopardy." Since Livingston's failure to provide pressure relieving devices represents a potential harm for its residents, it may be properly sanctioned by CMS. *Id.* Furthermore, the applicable participation requirement mandates that "each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care." 42 C.F.R. § 483.25. This preventive focus of the regulation directs facilities to provide a certain standard of care to prevent the risk of pressure sores for its residents, even if no pressure sores actually develop. That standard of care is tailored for each individual resident in his or her plan of care. Thus, we find that HHS was justified in penalizing Livingston for its failure to follow the pressure relieving recommendations in its residents' plans of care.[6]

---

[5] Similarly, there is no dispute that Residents 83 and 73 developed pressure sores during their stay at Livingston.

[6] In making this determination, we recognize that courts should "give substantial deference to an agency's interpretation of its own regulations." *St. Francis Health Care Centre v. Shalala,* 205 F.3d 937, 943 (6th Cir. 2000) (internal citations omitted).

D.      RESIDENT 1

Here, the ODH surveyors observed Resident 1 without a pressure relieving device and with a pressure sore on the top of his right foot. After reviewing the record, it was the determination of the administrative law judge that there were disputed material facts as to whether Livingston gave proper care to Resident 1's right foot and if there was an avoidable pressure sore on his foot. However, the opinions of this administrative law judge and the DAB support our view that Livingston did not comply with the participation requirements in 42 C.F.R. § 483.25(c) because it failed to provide a pressure relieving cushion as specified by Resident 1's plan of care.

Livingston's primary argument is that it has not had an opportunity to respond to these "late hour assertions" because the surveyor's observations regarding the lack of pressure relieving devices were not recorded in the Notice which outlined its alleged noncompliance. This argument is without merit. Although these observations were not included in the Notice, they were contained in CMS's Motion for Summary Judgment, which was filed on November 16, 2001. Livingston had a full opportunity to respond to these allegations prior to the hearing before the administrative law judge on May 22, 2002. Consequently, there is no indication that Livingston has been prejudiced by the inclusion of these allegations.

Livingston's second argument is that Resident 1 was provided pressure relieving devices. In support of this position, Livingston again cites Walden's declaration, who states that "pressure relieving devices were made available." J.A. at 161 (Walden Decl.). However, Walden makes no reference to the existing medical records or any other documentation in support of her conclusory statement. This statement does not raise a genuine issue of a material fact. Rather, the undisputed facts clearly demonstrate that Livingston failed to provide the proper pressure relieving devices as required by the plan of care.

E.      RESIDENT 20

Like Residents 90 and 1, the facts indicate that Resident 20 was observed without a pressure relieving device on his wheelchair in direct contravention of his plan of care. The administrative law judge concluded that, for purposes of summary judgment, Livingston had raised a genuine issue as to whether the wound on this resident's buttock was a pressure sore. However, he also decided that (1) this dispute regarding Resident 20's wound was not material and (2) Livingston was in noncompliance because of its failure to provide him with a pressure relieving device. The DAB also concluded that its finding of noncompliance resulted from Livingston's failure to provide the specific treatment recommendations in Resident 20's plan of care.

Given that Resident 20 was at some risk for the development of pressure sores, Livingston's failure to provide the requisite pressure relieving devices listed in his plan of care constitutes a sufficient basis for a finding of noncompliance under 42 C.F.R. § 483.25(c).

IV.

In summary, Livingston was penalized because the undisputed facts and medical records unambiguously demonstrate that it (1) did not prevent the development of pressure sores on Residents 73, 83, and 90 and (2) failed to provide the requisite pressure relieving devices in each resident's plan of care. Livingston has not presented a sufficiency of evidence upon which to challenge the conclusion of the CMS that it failed to provide the necessary care and treatment to prevent pressure sores as required by 42 C.F.R. § 483.25(c). Since Livingston has failed to substantially comply with the participation requirements of 42 C.F.R. § 483.25(c), we AFFIRM the grant of summary judgment in favor of the HHS.