**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0284n.06
Filed: April 13, 2005

**No. 04-3018**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

WINDSOR HEALTH CENTER,                )
                                      )
Petitioner,                           )      ON PETITION FOR REVIEW OF
                                      )      FINAL DECISION OF DEPARTMENTAL
v.                                    )      APPEALS BOARD OF THE UNITED
                                      )      STATES DEPARTMENT OF HEALTH
MICHAEL O. LEAVITT,* Secretary,       )      AND HUMAN SERVICES
United States Department of Health and )
Human Services; and                   )
UNITED STATES DEPARTMENT OF           )
HEALTH AND HUMAN SERVICES,            )
                                      )
Respondents.                          )

**Before: GILMAN and SUTTON, Circuit Judges; and McKEAGUE, District Judge.\*\***

**PER CURIAM.** Petitioner Windsor Health Center ("Windsor"), a skilled nursing facility

in Youngstown, Ohio, has petitioned for judicial review of a final decision of the Departmental

Appeals Board of the United States Department of Health and Human Services. The decision,

affirming the administrative law judge's summary judgment, is said to be the product of an improper

shifting of the burden of proof. Upon due consideration of the record, we find no error.

The Appeals Board's decision upholds the imposition of a civil penalty for Windsor's

noncompliance with a Medicare program participation requirement. Windsor was found not to have

_____

\* Michael O. Leavitt, sworn in as Secretary of the Department of Health and Human Services on January 26, 2005, is substituted for outgoing Secretary Tommy Thompson as defendant in this case, sued in his official capacity.

** The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

been in substantial compliance, from November 30, 2000 to December 21, 2000, with the requirement that it "ensure that each resident receives adequate supervision and assistance devices to prevent accidents." 42 C.F.R. § 483.25(h)(2). This determination was based primarily on two accidents. On July 24, 2000, a wheelchair-bound resident, "Resident 49," sustained a fractured right tibia when, upon being wheeled into her room, her leg struck the footboard of her bed. On November 28, 2000, a second resident, "Resident 57," fell while showering, suffering a laceration on her forehead that required seven stitches. After investigation of these incidents, the Centers for Medicare & Medicaid Services ("CMS") determined that Windsor was not in compliance with Medicare program requirements and imposed a civil money penalty of $550 per day, totaling $11,550 for the 21-day period of noncompliance.

On review, the ALJ first determined, on the record presented, that an evidentiary hearing was not necessary. The ALJ concluded that CMS had made a *prima facie* showing that Windsor had failed to provide Residents 49 and 57 with adequate supervision to prevent the accidents, and that Windsor had failed to respond with evidence sufficient to create a genuine issue of material fact. The ALJ therefore granted CMS's motion for summary judgment, upholding CMS's finding of noncompliance and finding the penalty imposed reasonable. On appeal, the Appeals Board, in a 19-page final decision, affirmed in all respects. Windsor now challenges the award of summary judgment to CMS, contending that it was entitled to an evidentiary hearing. Windsor does not challenge the amount of the civil monetary penalty in this appeal. We review the Appeals Board's decision *de novo*. *Livingston Care Center v. U. S. Dept. of Health & Human Servs.*, 388 F.3d 168, 172-73 (6th Cir. 2004).

2

Windsor's arguments on appeal stem from the Appeals Board's purported application of the "*Hillman* standard," which is said to have resulted in impermissibly shifting the burden of proof from CMS to Windsor. First of all, Windsor's objection to the "*Hillman* standard" *per se* is a red herring. The *Hillman* standard is not mentioned in the ALJ's decision. In the Appeals Board's final decision, it is mentioned only in a footnote, in relation to the standards governing assessment of CMS's motion for summary judgment. Specifically, the Appeals Board observed in passing that the standard of review to be applied to the motion for summary judgment is consistent with the ultimate burden-of-proof requirements recognized in earlier Appeals Board holdings, including *Hillman Rehabilitation Center*, DAB Nos. 1611 (1997), and 1663 (1998); *aff'd, Hillman Rehabilitation Center v. United States*, No. 98-3789 (GEB) (D.N.J. May 13, 1999). DAB Final Decision Dec. 22, 2003, p. 4, n. 2; J.A. 36.[1] It is thus apparent that neither the ALJ nor the Appeals Board directly applied *Hillman* – right or wrong – as binding precedent in this case. Reference to the *Hillman* standard in the Appeals Board's decision represents pure *dictum*, not integral to the ultimate decision. It follows that Windsor's collateral attack on *Hillman* as violative of Administrative Procedures Act requirements is spurious. Moreover, the fallacy of Windsor's *Hillman* argument having thus been exposed, it is also clear that Windsor's contention that the Appeals Board

---

[1] The text of the footnote reference, in its entirety:

> These criteria are consistent with our holdings concerning the burden of proof in cases brought under 42 C.F.R. Part 498 to enforce compliance with participation requirements for SNFs and other long term care facilities. The applicable burden of proof requires CMS to come forward with sufficient evidence on disputed facts that together with the undisputed facts will establish a *prima facie* case that the facility is not complying with one or more participation requirements. The facility may rebut a *prima facie* case of noncompliance by showing, by a preponderance of the evidence, that it is in substantial compliance with participation requirements. *Hillman Rehabilitation Center*, DAB Nos. 1611 (1997), and 1663 (1998); *aff'd, Hillman Rehabilitation Center v. United States*, No. 98-3789 (GEB) (D.N.J. May 13, 1999); *Cross Creek Health Care Center*, DAB No. 1665 (1998) (same framework applies in long-term care facility cases involving CMPs).

3

improperly required it, in accordance with *Hillman*, to adduce a preponderance of the evidence simply to avoid summary judgment is unsupported.

What is properly before the Court, however, is Windsor's challenge to the standards actually applied by the Appeals Board, defined as follows:

> Whether summary judgment is appropriate is a legal issue that we address *de novo*, viewing the proffered evidence in the light most favorable to the non-moving party. .... On the issue of whether a remedy is authorized, CMS is entitled to summary judgment if it has (1) made a *prima facie* showing that petitioner was not in substantial compliance with one or more Medicare participation requirements, and (2) demonstrated that there is no dispute about any material fact supporting its *prima facie* case and that it is otherwise entitled to judgment as a matter of law. .... CMS is not entitled to summary judgment if the petitioner has proffered evidence that would permit an ALJ to conclude that it was in substantial compliance with the participation requirements during the relevant period.

DAB Final Decision pp. 3-4; J.A. 35-36 (citations, footnote omitted). Applying these standards, the Appeals Board concluded that CMS had both made a *prima facie* showing of noncompliance and demonstrated that there was no genuine issue of material fact. The Appeals Board further found, in connection with both predicate accidents, that Windsor proffered no evidence to support a finding that it provided supervision adequate to prevent the subject accidents.

Windsor does not dispute the facts upon which the Appeals Board decision was based. Windsor insists, however, that those facts are not necessarily sufficient to warrant the inference that it provided inadequate supervision to Resident 49 or Resident 57. Windsor reiterates speculative arguments made first to the ALJ and then to the Appeals Board to the effect that the accidents might not have been attributable to inadequate supervision. To the extent that the evidence presented by CMS was not conclusive as to how the accidents actually occurred and how inadequate supervision causally contributed to them, Windsor maintains that genuine issues of material fact remained that required a hearing. Award of summary judgment to CMS despite these outstanding factual

4

questions is said to be tantamount to imposition of strict liability.

This Court has recognized the validity of summary judgment procedures in Medicare program compliance proceedings as a possible alternative to an in-person hearing. *Livingston*, 388 F.3d at 172; *Crestview Parke Care Center v. Thompson*, 373 F.3d 743, 750 (6th Cir. 2004). The standards governing summary judgment procedures are familiar and well-established. They are well summarized in *Livingston*, where the court noted in particular that "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses." 388 F.3d at 172-73, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A moving party may demonstrate that there is no genuine issue of material fact by presenting evidence on an essential element of its claim or defense so one-sided as to compel the conclusion that it must prevail as a matter of law. *Id.* at 173. To avoid entry of summary judgment in the face of such a showing, the non-movant must "act affirmatively" by presenting significantly probative evidence – more than a mere scintilla – on which the fact-finder, in this case the ALJ, could reasonably find for the non-movant. *Id.*; *Crestview*, 373 F.3d at 747.

Here, it is clear that the ALJ and the Appeals Board correctly evaluated CMS's motion for summary judgment. In relation to the injuries accidentally sustained by both Resident 49 and Resident 57, CMS was correctly deemed to have made out a *prima facie* case that Windsor provided inadequate supervision to prevent the accidents. A *prima facie* showing is sufficient evidence "to establish a fact or raise a presumption unless disproved or rebutted." Black's Law Dictionary (8th ed. 2004). To rebut this *prima facie* showing and defeat the motion for summary judgment, Windsor was not required, as it now argues, to show adequate supervision by a preponderance of the evidence. It had only to "act affirmatively" and present *some* evidence, some significantly probative

5

evidence, more than a scintilla, to support a reasonable finding that the supervision provided was not inadequate to prevent the accidents.

Windsor undisputedly presented *no* additional evidence. *Cf. Crestview*, 373 F.3d at 754 (finding weak evidence sufficient to create a genuine issue of material fact). Instead, Windsor relied then, and relies now, on *arguments* – arguments that the evidence presented by CMS is insufficient to make out a *prima facie* case; arguments that the accidents might have occurred anyway, in spite of perfectly adequate supervision. Each of these arguments is directly and, in our opinion, properly addressed in the Appeals Board's decision. For the reasons articulated by the Appeals Board, none of Windsor's arguments is sufficient to undermine the integrity of CMS's *prima facie* showing. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (holding that non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts.").

Nor do we accept Windsor's characterization that award of summary judgment to CMS, in the absence of conclusive evidence on the immediate cause of each accident, is tantamount to imposition of strict liability. In *Crestview*, the court specifically held that 42 C.F.R. § 483.25 is not a strict liability regulation. 373 F.3d at 754. Indeed, Windsor was afforded ample opportunity to present evidence, in response to CMS's *prima facie* case, demonstrating that the supervision provided was not inadequate to prevent the accidents – evidence, for instance, that either of the accidents was caused by an "act of God" or the deliberate tortious or criminal act of a third person or some other unforeseeable circumstance that could not be prevented by adequate supervision. It utterly failed to do so.

This is thus precisely the sort of case for which summary judgment procedures represent an

efficient and appropriate alternative to an evidentiary hearing. Indeed, in the absence of evidence supporting its defense, Windsor is at a loss to explain how affording it an evidentiary hearing before the ALJ could be expected to result in a different outcome. Windsor gave the ALJ and the Appeals Board, and now gives this Court, no reason to believe that an evidentiary hearing would be other than a needless and burdensome formality.

Accordingly, considering the Appeals Board's decision on the extant record *de novo*, we find no error. The Appeals Board's final decision, affirming the award of summary judgment to CMS and upholding the imposition of the civil monetary penalty, is therefore **AFFIRMED**.