Christopher ENGLE, et al., Plaintiffs,

v.

Matthew MEISTER, et al., Defendants.

No. 3:04cv201.

United States District Court,
S.D. Ohio,
Western Division.

Jan. 29, 2007.

George Andrew Katchmer, Jr., Dayton, OH, for Plaintiffs.

John C. Musto, City Attorney's Office, Dayton, OH, for Defendants.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 14); STATUS CONFERENCE SET BY TELEPHONE

RICE, District Judge.

This litigation stems from the events that occurred in the vicinity of 20 Samuel Street, Dayton, Ohio, during the evening of June 10, 2003.[1] That evening, Defendants Michael Meister ("Meister") and Mollie Sharp ("Sharp") were on patrol as part of their duties as police officers employed by Defendant City of Dayton ("Dayton"). While they were in the vicinity of Samuel Street, they received a radio report that a 17 year-old white male was in that area with a gun. Meister and Sharp were informed that the suspect had threatened to kill his grandmother and mother with a handgun, after which he had fled on foot, threatening to kill police if they intervened. Upon approaching the residence at 20 Samuel Street, the officers noticed a number of juveniles in the front of that location. One of those individuals, later identified as Plaintiff Christopher Engle ("Engle"), matched the description of the 17 year-old who had threatened to kill his grandmother, mother and any intervening police officers.[2]

Sharp asked Engle for his identification, and Engle, in his own words, joked with her about asking for her telephone number. Meister then grabbed Engle and forced him into the back of a police cruiser, after which the officer drove the cruis-

1. Since this litigation comes before the Court on the Defendants' Motion for Partial Summary Judgment (Doc. # 14), the Court sets forth the facts and circumstances giving rise to it in the manner most favorable to the Plaintiffs, the parties against whom summary judgment is sought. It bears noting, however, that the Defendants have supplied evidence which would support the finding that the events were drastically different from those described herein.

2. Shortly before Meister and Sharp approached him, Engle had been questioned by other officers who did not detain him.

er into an alley. While that was occurring, Sharp tried to stop people from helping Engle. Thereafter, Meister parked the cruiser and, after yelling and screaming at Engle, got into the back of the cruiser and hit him. After a crowd approached the cruiser, Meister told Engle to stop resisting and drove away. Plaintiff Deborah Chrisman ("Chrisman"), Engle's mother, was among those who had approached the cruiser. Sharp told her that Meister was merely questioning Engle.

After those events, Chrisman and her husband went to the Second District Headquarters of the Dayton Police Department, where they gave a written statement concerning the events which had occurred during the evening of June 10, 2003. A sergeant told them that the matter would be investigated. Such an investigation did occur; however, Chrisman was not contacted after having given the written statement at Second District Headquarters. Moreover, despite her repeated efforts to obtain information about the investigation, she was constantly put off, rather than being provided the results. Engle also gave a written statement to police, but was not contacted again.

Engle and Chrisman bring this action against Meister, Sharp and Dayton. In their Complaint (Doc. # 1), the Plaintiffs set forth ten claims for relief, to wit: 1) a claim by Engle under 42 U.S.C. § 1983 against Meister, alleging that the officer's use of excessive force deprived him of his right to free from unreasonable seizures, in violation of the Fourth Amendment (First Claim for Relief); [3] 2) a claim under § 1983 by Engle against Meister, alleging that the officer seized him without probable cause in violation of the Fourth Amendment (Second Claim for Relief); [4] 3) a claim by Engle against Dayton under § 1983, predicated upon the First and Second Claims for Relief (Third Claim for Relief); 4) a claim of assault and battery by Engle against Meister (Fourth Claim for Relief); 5) a claim of false imprisonment by Engle against Meister (Fifth Claim for Relief); 6) a claim of intentional infliction of emotional distress by Chrisman against Meister (Sixth Claim for Relief); 7) a claim of negligent infliction of emotional distress by Chrisman against Meister (Seventh Claim for Relief); 8) a claim of intentional infliction of emotional distress by Chrisman against Sharp (Eighth Claim for Relief); 9) a claim of negligent infliction of emotional distress by Chrisman against Sharp (Ninth Claim for Relief); and 10) a claim of assault and battery by Engle against Sharp (Tenth Claim for Relief).

This case is now before the Court on the Defendants' Motion for Partial Summary Judgment (Doc. # 14). As a means of analysis, the Court will initially set forth the procedural standards it must apply whenever it rules on a request for summary judgment, partial or otherwise, following which it will turn to the parties'

---

3. Engle also contends that Meister's use of excessive force deprived him of liberty without due process of law and constituted summary punishment in violation of the Fourteenth Amendment. This claim, however, can be predicted only upon the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that all claims of excessive force used in the context of a seizure are to be analyzed solely under the reasonableness standard of the Fourth Amendment).

4. As with the First Claim for Relief, Engle bases his Second Claim for Relief on the Fourteenth Amendment, asserting that his seizure without probable cause deprived him of liberty without due process of law and constituted summary punishment. In accordance with *Graham*, the Second Claim for Relief must be based upon the Fourth Amendment alone.

arguments in support of and in opposition to the Defendants' motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255,

106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With their motion, the Defendants seek summary judgment on three aspects of Plaintiffs' claims, to wit: 1) Engle's claim against Dayton under § 1983 (Third Claim for Relief); 2) Chrisman's claims of negligent and intentional infliction of emotional distress against Sharp (Eighth and Ninth Claims for Relief); and 3) Engle's claim for assault and battery against Sharp (Tenth Claim for Relief). As a means of analysis, the Court will address those three requests in the above order.

## I. Engle's § 1983 Claim Against Dayton (Third Claim for Relief)

Dayton argues that it is entitled to summary judgment on Plaintiffs' § 1983 claims against it, because the evidence fails to raise a genuine issue of material fact concerning the question of whether one or more of its policies and customs was the cause of Meister's alleged deprivation of Engle's rights under the Fourth Amendment. Not surprisingly, Engle argues that the evidence raises a genuine issue of material fact on that question. As a means of analysis, the Court will initially set forth the legal standards which are applicable to all claims whereby a plaintiff attempts to impose liability, under § 1983, against a governmental employer such as Dayton, for the constitutional torts of its employees.

In *McQueen v. Beecher Community Schools*, 433 F.3d 460 (6th Cir.2006) the Sixth Circuit restated those legal principles:

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court "conclude[d] that a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. *Monell* requires that in order "[t]o establish municipal liability pursuant to § 1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation [ ] visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's offi-

cial decisionmaking channels.'" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir.2003) (quoting *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018), *cert. denied*, 541 U.S. 1041, 124 S.Ct. 2159, 158 L.Ed.2d 729 (2004).

*Id.* at 471 (emphasis and brackets in original). *See also, Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir.2006); *Gregory v. City of Louisville*, 444 F.3d 725, 753–54 (6th Cir. 2006).

In support of the proposition that one of its policies or customs was not the cause of Meister's alleged constitutional deprivations, Dayton has presented the affidavit of Wanda Smith ("Smith"), Dayton's Assistant Police Chief. Therein, Smith outlines Dayton's policies concerning investigating and disciplining officers for the use of excessive force, and the training its officers receive about the use of force and the law of search and seizure. Attached to and authenticated by Smith's affidavit is a copy of the policy of the Dayton Police Department concerning the use of force.

In response, Plaintiffs argue that the evidence raises a genuine issue of material fact on this issue, because Dayton failed to investigate the use of force in this particular instance. In her affidavit, Chrisman states that she complained about the use of excessive force on her son and gave a written statement to a sergeant at the Second District Headquarters. Although told by the sergeant that there would be an investigation into her complaint, she was not contacted. Moreover, although she repeatedly inquired about the status of such an investigation, she was put off and never informed of its results. In his affidavit, Engle states that he was not contacted by police, after having given them a statement about the events that occurred during the evening of June 10, 2003. Defendants have attached the affidavit of Kenneth Lakin ("Lakin"), a sergeant with the Internal Affairs Bureau of the Dayton Police Department, to their Reply Memorandum (Doc. # 16). Lakin states that an investigation into Meister's alleged use of force was conducted and that Plaintiffs were mailed a letter on July 31, 2003, explaining the results of that investigation to them. A copy of the report from that investigation has been attached to and authenticated by Lakin's affidavit.

Lakin's uncontroverted affidavit establishes that an investigation did take place. Nevertheless, construing the evidence in the manner most favorable to the Plaintiffs, this Court concludes that the evidence does raise a genuine issue of material fact as to whether an *effective* investigation was conducted. The complaining party and the victim of the alleged excessive force were not contacted during the investigation. Moreover, despite repeated inquiries, the complaining party could get no response from the Dayton Police Department concerning that investigation.

In arguing that the evidence raises a genuine issue of material fact on the Third Claim for Relief, Engle is in essence relying upon an inaction theory, asserting that Dayton has a policy of tolerating or condoning the use of excessive force against young males, as evidenced by its failure to investigate in adequate fashion the alleged use of force against him. In *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir.1996), the Sixth Circuit set forth the elements a plaintiff must demonstrate in order to establish such a theory:

(1) the existence of a clear and persistent pattern of illegal activity [by the municipal employer's employees];

(2) notice or constructive notice on the part of the [municipal employer];

(3) the [municipal employer's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in

their failure to act can be said to amount to an official policy of inaction; and

(4) that the [municipal employer's] custom was the "moving force" or direct causal link [of] the constitutional deprivation.

*Id.* at 508. In *Thomas v. City of Chattanooga,* 398 F.3d 426 (6th Cir.), *cert. denied,* 546 U.S. 814, 126 S.Ct. 338, 163 L.Ed.2d 50 (2005), the Sixth Circuit applied the test set forth in *Doe* in an analogous case. Therein, an individual who had been shot by a police officer employed by the City of Chattanooga brought suit along with his wife against Chattanooga, seeking compensation under § 1983 for the harm they had suffered as a result of the shooting. The District Court granted summary judgment in favor of Chattanooga, and the plaintiffs appealed. The Sixth Circuit affirmed, concluding, *inter alia,* that the District Court had not erred in rejecting the opinion of the expert witness hired by the plaintiffs that the incident in question demonstrated that Chattanooga had a policy of tolerating the use of excessive force, writing:

Appellants also argue that Davidson partially based his conclusion on the fact that Thomas was shot in violation of Department policy, and the internal investigation nonetheless determined the shooting to be justified. There is potentially a real question as to whether officer Abernathy was justified in shooting Thomas. But this question is not before us. The question here is whether there was some sort of policy, custom, or practice in the Chattanooga Police Department of condoning excessive force, and under *Doe,* such a policy must be shown by a clear and persistent pattern. 103 F.3d at 508. The danger in appellants' argument is that they are attempting to infer a municipal-wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a

simple *respondeat superior* standard. This path to municipal liability has been forbidden by the Supreme Court. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *cf. Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding that a municipality was not liable for its hiring decision where the employee later went on to use excessive force against plaintiff because the plaintiff failed to demonstrate that the municipality directly caused the injury through its own deliberate action). Thus, without showing more than officer Abernathy's potentially excessive use of force in this particular case, Thomas cannot survive summary judgment.

Appellants' best argument is that the Department has a custom of mishandling investigations of excessive force complaints. Davidson contends that the shooting of Thomas and the Department's treatment of Thomas's case is itself proof that it had an unwritten policy of failing to discipline its officers when they use excessive force against suspects. Davidson stated that "[i]n my opinion, Captain Crumley's report provides a clear insight into the Chattanooga Police Department's 'customary' method of preparing excessive force reports," and that, in his opinion, officer Abernathy violated the Department's written "use of force" policy.

It is debatable whether the Police Department properly deemed this shooting "justified." However as the district court noted, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ... the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments ..." (quoting *Graham v.*

*Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

All this aside, appellants must show not only that the investigation was inadequate, but that the flaws in this particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the Department knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause of the shooting here. *See Doe*, 103 F.3d at 508. Davidson's analysis focused mainly on the "deliberate indifference" aspects of this case.

As this Court noted in *Doe*, deliberate indifference "does not mean a collection of sloppy, or even reckless oversights; it means evidence showing an obvious, deliberate indifference" to the alleged violation. *Id.; Bd. of County Comm'rs of Bryan County*, 520 U.S. at 407, 117 S.Ct. 1382 (holding that deliberate indifference cannot be met by a "showing of simple or even heightened negligence"). The *Doe* Court found that even where a school board had some information that one of its teachers may have sexually abused students in the past and the board failed to remove him before he abused the plaintiff, the school board could not be found liable for having a policy, custom, or practice of condoning such abuse because there was no evidence that the school board failed to act regarding other teachers in similar circumstances; thus there was no evidence of any deliberate pattern. *Id.* at 508. *Doe* makes clear that the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference.

Despite the extreme circumstances here, appellants have not met their burden of showing that there is a genuine issue of whether an illegal Police Department policy exists. Appellants' expert inferred an illegal municipal policy from the Department's potentially insufficient investigation of Thomas's case, just as the plaintiff in *Doe* attempted to infer an illegal municipal policy from the school board's failure to remove the dangerous teacher at issue. Appellants' expert did not reach beyond the facts of this case to show any possibility of a pattern. Appellants point to this Court's finding in *Leach v. Sheriff of Shelby County*, 891 F.2d 1241 (6th Cir. 1989), in support of the notion that deliberate indifference can be demonstrated by a municipality's failure to adequately investigate claims. However, in *Leach*, this Court was convinced that the municipality had a policy of deliberate indifference to prisoners' medical needs based on the fact that there were several separate instances where the prison failed to investigate prisoner mistreatment. 891 F.2d at 1246–48 (noting that the lower court found that "at least 14 other paraplegics had received similar deplorable treatment"). Unlike the plaintiffs in *Leach*, appellants have failed to show several separate instances of the alleged rights violation. Furthermore, the fact that Crumley stated that she would find officer Abernathy "justified" in his shooting if she had to make the same decision again, does not show a pattern of deliberate indifference that goes beyond the facts of appellants' own case. Rather, Crumley's statement was about a hypothetical situation that was based entirely on the facts of Thomas's own case. Therefore, appellants' argument falls prey to the problem of collapsing the municipal liability standard into a *respondeat superior* standard.

*Id.* at 432–34.

■ Similarly, herein, Engle relies upon Dayton's failure to conduct an effective

investigation of his allegations that Meister used excessive force, in order to demonstrate that the evidence raises a genuine issue of material on the question of whether liability can be imposed upon Dayton for the constitutional torts of its employee, Meister. Just as the Sixth Circuit concluded in *Thomas* that the existence of an ineffective investigation into the incident in question was not sufficient to avoid summary judgment on claims against the municipal employer, by creating a genuine issue of material fact on a pattern or practice of tolerating or condoning the use of excessive force, this Court concludes that the inadequate investigation into the events giving rise to this litigation is not sufficient to raise a genuine issue of material fact on Engle's § 1983 claim against Dayton, the Third Claim for Relief in Plaintiffs' Complaint.

Accordingly, the Court sustains the Defendants' Motion for Partial Summary Judgment (Doc. # 14), as it relates to that claim.

## II. Chrisman's Claims of Intentional and Negligent Infliction of Emotional Distress Against Sharp (Eighth and Ninth Claims for Relief)

Sharp moves for summary judgment on these claims, arguing that the evidence fails to raise a genuine issue of material fact as to whether her conduct was sufficiently outrageous to be actionable. Chrisman disagrees. As a means of analysis, the Court will address the parties' arguments as they relate to the Eighth Claim for Relief, before turning to the Ninth such claim.

In *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), the Ohio Supreme Court held, in the syllabus:

> One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emo-

tional distress, and if bodily harm to the other results from it, for such bodily harm. (*Bartow v. Smith,* 149 Ohio St. 301, 78 N.E.2d 735, overruled.)

Therein, the Ohio Supreme Court elaborated upon what would be deemed to constitute extreme and outrageous conduct:

> With respect to the requirement that the conduct alleged be "extreme and outrageous," we find comment d to Section 46 of the Restatement, *supra,* at 73, to be instructive in describing this standard:

> " * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * * "

*Id.* at 374–75, 453 N.E.2d at 671–72.

The Eighth Claim for Relief against Sharp stems from her actions while Meister was allegedly beating Engle in the back of the police cruiser. Plaintiffs argue that Sharp's actions were extreme and outrageous, because she prevented a mother from intervening to protect her son who was being beaten. See Doc. # 15 at 5. That argument is not, however, borne out by the statements in Chrisman's affidavit. In ¶ 7 of that document, she states Sharp told her that Meister was only questioning her son and, further, in the most conclusory fashion, that Sharp attempted to prevent her from seeing what was happening in the cruiser.[5] In ¶ 8, Chrisman states that she continued walking toward the police cruiser where she saw Meister beating her son. In contrast, Sharp states in her affidavit that she did not touch or harm either of the Plaintiffs and that she did not prevent anyone from going to the location of the parked police cruiser to which Meister had taken Engle.

■ Simply stated, the conclusory statement in Chrisman's affidavit that Sharp attempted prevent her from seeing what was going on in the cruiser does not raise a genuine issue of material fact on the question of whether Sharp's actions were extreme and outrageous. Rule 56(e) provides in pertinent part that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the Supreme Court noted that "[t]he object of this [part of Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." The Sixth Circuit has, therefore, repeatedly held that a conclusory statement in an affidavit or declaration cannot create a genuine issue of material fact. See e.g., *Livingston Care Center v. U.S. Dept. of Health and Human Services,* 388 F.3d 168, 171 (6th Cir.2004); *Bell v. Ohio State University,* 351 F.3d 240, 253 (6th Cir. 2003).

Accordingly, the Court sustains the Defendants' Motion for Partial Summary Judgment (Doc. # 14), as it relates to the Eighth Claim for Relief in Plaintiffs' Complaint, a claim of intentional infliction of emotional distress on behalf of Chrisman against Sharp.

This Court cannot, however, reach the same conclusion with respect to Plaintiffs' Ninth Claim for Relief, a claim of negligent infliction of emotional distress, because it cannot agree with Defendants that the requirement that a defendant's conduct be extreme and outrageous is applicable to such claims. *Yeager* involved a claim of intentional infliction of emotional distress. Nevertheless, a number of Ohio intermediate appellate courts have held that the same standard of extreme and outrageous conduct applies to claims of negligent infliction of such distress. See e.g., *Volkert v. Talbott,* 1998 WL 134328 (Ohio App. 1998); *Simms v. Kroger Co., Inc.,* 1996

---

**5.** The latter statement is conclusory, because Chrisman does not remotely identify the actions of Sharp which constituted an attempt to prevent her from seeing what was going on in the cruiser.

WL 87465 (Ohio App.1996); *Yackshaw v. John Carroll Univ. Bd. of Trustees*, 89 Ohio App.3d 237, 624 N.E.2d 225 (1993). This Court declines to follow those decisions, because they have failed to address the two decisions of the Ohio Supreme Court in which the tort of negligent infliction emotional distress was recognized. In neither of those decisions was the defendant's conduct extreme and/or outrageous, nor did the Ohio Supreme Court suggest in either of those decisions that extreme and/or outrageous conduct was a predicate for recovery under that tort.

In *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 447 N.E.2d 109 (1983), the Ohio Supreme Court recognized a claim for negligent infliction of emotional distress by the plaintiff, arising out of his car being struck by a piece of glass which fell from the defendant's truck as a result of its alleged negligence. In *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983), the Ohio Supreme Court recognized a claim for negligent infliction of emotional distress by the plaintiff, whose house, which was located across the street from an exit ramp from an Interstate highway, had been struck by the defendants' automobiles. The Ohio Supreme Court did not suggest that the incidents which gave rise to that litigation constituted extreme or outrageous conduct.[6] Indeed, if this Court

were to follow the Defendants' suggestion that the tort of negligent infliction of emotional distress must be based upon extreme and outrageous conduct, it would deny the use of that tort in the quintessential context in which it arises, i.e., where a parent suffers severe and debilitating distress because she saw her minor child killed by the defendant's negligent operation of an automobile.

Accordingly, the Court overrules the Defendants' Motion for Partial Summary Judgment (Doc. # 14), as it relates to the Ninth Claim for Relief in Plaintiffs' Complaint, a claim of negligent infliction of emotional distress on behalf of Chrisman against Sharp.[7]

### III. Engle's Claim of Assault and Battery Against Sharp (Tenth Claim for Relief)

■ Sharp argues that she is entitled to summary judgment on Engle's assault and battery claim against her, the Tenth Claim for Relief in Plaintiffs' Complaint. In her affidavit, Sharp states that she never touched or harmed either Plaintiff. Although Plaintiffs do not challenge that statement, they nevertheless argue that the evidence raises a genuine issue of material fact on this claim, because Engle states in ¶ 5 of his affidavit that "Sharp tried to stop people from helping me."[8]

---

**6.** Indeed, in the syllabus, the *Paugh* court referred to the triggering incident of the claim of the negligent infliction of emotional distress as an accident. Extreme or outrageous conduct is not required for or synonymous with an accident; indeed, the terms are mutually inconsistent.

**7.** In one sentence, Defendants argue that summary judgment is appropriate on this claim, because Sharp's "conduct cannot be the proximate cause of any serious and debilitating injury." *See* Doc. # 14 at 10. In the absence of an explanation why that is so, this Court is unable to address this argument.

**8.** The Court has a concern as to whether Engle's statement in that regard is based

upon his personal knowledge, since he also states in his affidavit that he curled up to avoid being hit by Meister, thus raising the inference that he, personally, could not have seen what he apparently claims he saw. Moreover, Engle did not indicate in his affidavit that his mother or anyone else was aware of Sharp's actions in trying to stop people from helping him. Accordingly, the Court questions whether his statement is based upon inadmissible hearsay. Since Defendants did not raise the question, the Court does not address it further. However, given the critical nature of this statement to the survival of this claim, Defendants may wish to raise this issue at the Final Pre–Trial Conference.

Thus, Engle contends that liability can be imposed upon Sharp for assault and battery, because she aided Meister in his actions, rather than because she actually struck or threatened to strike him. In *Guerrero v. C.H.P., Inc.*, 2001 WL 931640 (Ohio App.2001), the Eighth District Court of Appeals explained that "a person who is present at the commission of an assault or an assault and battery and who encourages or incites it by words, gestures, looks, or signs, or who in any way or by any means actually countenances or approves an assault and battery is deemed an aider and abettor and also may be held civilly liable." *Id.* at *4. *See also, Frigmanski v. Watruba*, 2001 WL 279765 (Ohio App.2001). The jury could find that Sharp encouraged Meister in the alleged assault and battery by trying to stop people from helping Engle.

Accordingly, the Court overrules Defendants' Motion for Partial Summary Judgment (Doc. # 14), as it relates to the Tenth Claim for Relief in Plaintiffs' Complaint, a claim of assault and battery on behalf of Engle against Sharp.

Counsel will take note that a telephone conference call will be convened between the Court and counsel, beginning at 8:30 a.m. on Thursday, February 1, 2007, to set a trial date and other dates leading to the resolution of this litigation.