NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0089-22

CHEE NG, PH.D.,

 Plaintiff-Appellant,

v.

FAIRLEIGH DICKINSON
UNIVERSITY,

 Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

February 16, 2024

APPELLATE DIVISION

Submitted January 23, 2024 – Decided February 16, 2024

Before Judges Sumners, Rose and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1216-19.

The Weir Law Firm, LLC, attorneys for appellant (Bonnie M. Weir, of counsel and on the briefs).

Walsh Pizzi O'Reilly Falanga LLP, attorneys for respondent (Martin T. H. Lyons and David Cramer, on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

Plaintiff, Dr. Chee Ng, appeals the Law Division's order dismissing Dr.

Ng's complaint with prejudice and granting summary judgment in favor of

defendant Farleigh Dickinson University (FDU). Following the university president's recommendation, the FDU Board of Trustees (Board) terminated Dr. Ng, a tenured professor, after reviewing a series of complaints about his job performance over several years.

Dr. Ng sued, alleging FDU failed to follow procedures outlined in its faculty handbook when they fired him. After the close of discovery, FDU moved for summary judgment. The court granted FDU's motion, finding the Board properly followed its own internal procedures and there was sufficient evidence in the record to support its decision.

On appeal, Dr. Ng asks us to perform a de novo review of the Board's actions, and argues the Board failed to prove his conduct warranted removal as a tenured member of the FDU faculty. We are not persuaded. Our courts have used the administrative agency standard in reviewing certain internal decisions of our public universities. Mindful of the United States Supreme Court's observation that universities must be free to "determine for [themselves] on academic grounds who may teach," Sweezy v. New Hampshire, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring), we conclude that an agency standard of review, and its corresponding deference to institutional expertise, applies to a private university's internal procedures for removal of a tenured faculty

member. We conclude that the trial court properly granted summary judgment and affirm.

I.

Dr. Ng was hired by FDU as an associate professor of finance in the Silberman College of Business in December 1999. FDU granted Dr. Ng tenure in 2003 and promoted him to full professor in 2007. Throughout his employment with FDU, Dr. Ng's immediate supervisor was the chair of his department, Dr. Evangelos Djimopoulos. In the fall of 2016, Dr. Karen Denning became the new departmental chair. The departmental chairs reported to the dean of the business school. During the relevant period, there were two business school deans, Dr. William Moore, and Dr. Andrew Rosman. The associate dean of the business school at all relevant times was Dr. James Almeida.

In spring 2009, FDU received complaints from ten students enrolled in one of Dr. Ng's classes. The allegations focused on three areas of Dr. Ng's conduct: discriminatory comments during class; mistreatment of students; and generally rude demeanor.

In fall 2010, Dr. Djimopoulos, the department chair, received a letter signed by seven of Dr. Ng's students. The letter complained about Dr. Ng's: improper conduct; inappropriate comments about being tenured; inappropriate discussions about out-of-class subjects; and general insensitivity to student

A-0089-22

3

questions about the in-course material. After receiving these complaints, Dr. Djimopoulos met with Dr. Ng three times during the fall semester to discuss the student's allegations. According to Dr. Djimopoulos, the purpose of the meetings was to "avoid similar complaints in the future." He recommended Dr. Ng "modify his approach to classroom management and be more accessible to students."

Just over one year later, in January 2012, yet another group of students submitted complaints alleging Dr. Ng baselessly accused his class of cheating and discouraged them from asking questions during his lecture. Later that semester, another student complained Dr. Ng made a discriminatory comment, singling out a religious minority.

Dr. Djimopoulos addressed these complaints in an email to Dr. Ng on March 28, 2012, copying the dean and the associate dean of the business school. Dr. Ng responded to the email, listing six steps he had taken to improve, ranging from encouraging students to attend his office hours to checking homework and requiring their full attention during class. Dr. Djimopoulos emailed Dr. Ng again, addressing the student complaints and offering advice to Dr. Ng to make the students feel more comfortable in class.

In fall 2013, more students complained to Dr. Djimopoulos about Dr. Ng's classroom demeanor. Again, Dr. Djimopoulos met with Dr. Ng multiple times

during the semester to discuss the complaints and potential remedies, memorializing these conversations with emails to Dr. Ng. Dr. Djimopoulos specifically noted Dr. Ng's response to the complaints was "completely inadequate." Dr. Ng once again responded with emails negating the students' complaints and offered extra office hour sessions.

Five more students filed complaints in the 2015 spring semester alleging discriminatory comments, baseless cheating accusations, and classroom demeanor. On April 7, 2015, Dr. Almeida met with Dr. Ng to review the students' allegations. In his report of the meeting, Dr. Almeida noted that Dr. Ng did not offer a basis for accusing his class of rampant cheating.

On April 22, 2015, Dr. Rosman prepared a memo documenting the five new complaints. He noted Dr. Ng had been counseled on his classroom demeanor and verbal mistreatment of students. However, Dr. Rosman concluded, "rather than reform . . . [plaintiff] ha[d] become more inappropriate and that the escalation of this behavior ha[d] been taken to such an extreme that it [was] harmful to FDU."

Dr. Rosman wrote Dr. Ng during the 2015 summer semester, detailing the thirty-six complaints made against him over time. The dean informed Dr. Ng that the complaints showed a "clear pattern of unprofessional behavior" and

placed Dr. Ng on notice that "serious sanctions" would be imposed if he did not improve.

During the fall 2015 and spring 2016 semesters, Dr. Ng did not teach because he was on sabbatical. Upon his return to the classroom in the fall of 2016, FDU received a student complaint alleging Dr. Ng had called the class "stupid." Dr. Denning, the new departmental chair, met with the student and Dr. Ng separately regarding the incident. Dr. Rosman wrote Dr. Ng stating the recent complaint was similar to prior student complaints. The dean stated he did not want to deal with any more complaints about Dr. Ng, and if he did, the "consequences [would] be more severe."

A year later, in fall 2017, nine students filed complaints. Once again, the complaints ranged from discriminatory and disrespectful comments to unsupported accusations of cheating. Dr. Rosman viewed this as Dr. Ng's "third strike" and forwarded the complaints to FDU provost, Gillian Small.

On March 20, 2018, Small notified Dr. Ng the university had commenced dismissal proceedings pursuant to section XI.3.1 of the faculty handbook. Provost Small then provided Dr. Ng with a statement of charges after the University Grievance Committee (UGC) recommended pursing dismissal proceedings.

A-0089-22

The UGC found there was adequate cause for dismissal, alleging Dr. Ng breached various provisions of the faculty handbook, specifically sec. XI.1.1, citing "[f]ailure to perform professional responsibilities, either through gross incompetence, gross negligence, or willful disregard of scholarly and professional standards," and sec. XI.1.3, "[w]illful acts which directly and seriously subvert the rights and welfare of members of the University community." The statement of charges also alleged Dr. Ng violated additional standards established by the American Association of University Professors.

On May 21, 2019, the UGC issued a summary report and recommended that Dr. Ng be placed on probation for a period of two to three years. Less than two months later, FDU president Christopher A. Capuano rejected the UGC's findings, and concluded there was adequate cause supporting termination.

Capuano forwarded his written recommendation to the Board who reviewed the entire record, including submissions from Dr. Ng, and unanimously voted to fire him. The Board found clear and convincing evidence Dr. Ng had engaged in willful misconduct, and that the voluminous record before it supported dismissal. Among other issues, the Board found all the student complaints, now totaling forty-six, credible. The Board rejected Dr. Ng's arguments that the students' complaints were inherently unreliable.

A-0089-22

7

Finally, the Board noted FDU's several attempts over the years to implement corrective action to assist Dr. Ng in correcting his classroom demeanor.

On September 16, 2019, Dr. Ng filed a complaint in the Law Division, alleging FDU breached the terms of the faculty handbook because it failed to establish adequate cause for termination by clear and convincing evidence. After completion of discovery, FDU moved for summary judgment. Following an initial hearing the trial court ordered the parties to file supplemental submissions to show "where there is evidence from which a reasonable fact finder . . . could find by clear and convincing evidence . . . that the Board acted in accordance with the handbook." The parties did so, and the court conducted a second hearing on April 29, 2022.

The court granted summary judgment for FDU, entering an order dismissing Dr. Ng's claim with prejudice on August 1, 2022. In its forty-page statement of reasons, the court found the faculty handbook authorized the Board to make the "final decision" on Dr. Ng's termination from his tenured professorship, and further found the Board were neither arbitrary, capricious, nor unreasonable in doing so.

On appeal, Dr. Ng's primary argument is that the Board failed to meet their burden of proof at Dr. Ng's termination hearing, and that the trial court committed error by reaching the same conclusion as the Board without weighing

the evidence itself. Related to his main argument, Dr. Ng contends the record presents genuine issues of material fact which warrant denial of summary judgment. Finally, Dr. Ng also contends that the trial court erred when it ordered the parties to file supplemental submissions before deciding defendant's summary judgment motion.

## II.

### A.

As a preliminary matter, we conclude the trial court did not err when it sought supplemental submissions in preparation for deciding defendant's summary judgment motion. "A trial judge has discretion to permit supplemental pleadings, and such 'discretion should be exercised to increase, not limit, the likelihood that the information before the court reflects facts that could be adduced at a hearing.'" Burns v. Hoboken Rent Leveling & Stabilization Bd., 429 N.J. Super. 435, 443 (App. Div. 2013). The trial court properly exercised its discretion when it found the record insufficient and requested additional briefing. The resultant order increased the amount of relevant evidence available to the trial court to facilitate an informed decision.

### B.

Our review of a ruling on summary judgment is typically de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J.

A-0089-22

36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). We apply that standard to our review of the trial court's order. To the extent Dr. Ng argues that the trial court should have exercised a de novo review of the Board's decision, we disagree.

We have previously accorded deference to a private high school's institutional expertise in applying agreed-upon procedures for hiring, promoting, and retaining its teaching faculty. See Stigliano v. St. Rose High School, 198 N.J. Super. 520, 530 (App. Div. 1984) ("[W]here the parties themselves agree that a procedure other than arbitration is to provide a conclusive resolution of their differences, we perceive nothing unfair in approving or supporting their choice."); see also Chen v. Chen, 297 N.J. Super 480, 489 (App. Div. 1997).

A review of our relevant jurisprudence reveals well-settled deference to the internal decisions of our public universities. However, our courts have not considered a private university's termination of a tenured faculty member.

When considering the case of a Rutgers professor who was denied tenure, our Supreme Court cautioned that, "[n]o decision can more fully implicate an institution's academic responsibility than the decision to hire, promote, and retain teaching faculty." Snitow v. Rutgers University, 103 N.J. 116, 123 (1986). As such, we exercise great caution when we are asked to substitute our

"judgment for that of a teaching university as to the university's method of evaluating tenure." Id. at 121.

In Mittra v. Univ. of Med. & Dentistry of New Jersey, 316 N.J. Super. 83 (App. Div. 1998), we considered the claim of a dental student dismissed from a public university for poor academic performance. Id. at 86-87. While we did not expressly employ an arbitrary, capricious, and unreasonable standard, we deferred to the university's broad discretion in its evaluation of academic performance, holding "[r]igid application of contract principles to controversies concerning student academic performance would tend to intrude upon academic freedom and to generate precisely the kind of disputes that the courts should be hesitant to resolve." Id. at 91.

In Lipman v. Rutgers-State Univ. of New Jersey, we held that a public university's "domicile decisions, when made to determine appropriate tuition charges for its students, shall be accorded deference, and reviewed under the arbitrary, capricious or unreasonable standard." 329 N.J. Super 433, 443-44 (App. Div. 2000). The Supreme Court used the same agency standard of review while it considered a public university's domicile determination about one of its students in Shim v. Rutgers, 191 N.J. 374, 384 (2007).

A-0089-22

11

To the extent that Dr. Ng relies on cases such as <u>Woolley v. Hoffmann-La Roche, Inc.</u>,[1] <u>Preston v. Claridge Hotel & Casino, Ltd.</u>,[2] and <u>American Association of University Professors, Bloomfield College Chapter v. Bloomfield College</u>,[3] we read these cases as supporting our well-settled use of common-law contract jurisprudence to determine if an employer's actions to terminate an employee comport with the procedures set out in a non-negotiated employee handbook. These cases are inapposite, as it is undisputed that FDU's faculty handbook is a negotiated agreement which establishes the method and manner the university must follow to remove tenure status from a professor.

We note other jurisdictions afford deference when they review a university's decision making. <u>See, e.g.</u>, <u>Brahim v. Ohio Coll. of Pediatric Med.</u>, 99 Ohio App. 3d 479, 488 (1994) (upholding a private university's termination of a tenured professor supported by substantial evidence in the record); <u>Bergmann v. Bd. of Regents of Univ. Sys. of Maryland</u>, 167 Md. App. 237, 269–70 (2006) (reviewing a university determination using established principles governing judicial review of administrative agencies); <u>Berkowitz v. President &</u>

---

[1]  99 N.J. 284 (1985).

[2]  231 N.J. Super. 81 (App. Div. 1989).

[3]  129 N.J. Super. 249 (Ch. Div. 1974), <u>aff'd</u>, 136 N.J. Super. 442 (App. Div. 1975).

Fellows of Harvard Coll., 58 Mass. App. Ct. 262, 269-70 (2003) (holding courts "are not to intrude into university decision making" absent of "a violation of a reasonable expectation created by the contract" or conduct that is "arbitrary and capricious").

When we integrate principles of academic freedom with our deference to an academic institution's agreed upon grievance process, we conclude an agency standard of review must apply to consider a challenge to a private university's decision to terminate the employment of a tenured professor. Such a decision cannot "more fully implicate an institution's academic responsibility." Snitow, 103 N.J. at 123.

C.

Dr. Ng argues the Board failed to establish "willful conduct . . . by clear and convincing evidence based upon the record considered as a whole" as required by FDU's faculty handbook. Dr. Ng further argues the Board failed to afford sufficient weight to Dr. Ng's responses to the student complaints. This argument falls flat. Dr. Ng's right to challenge his termination emanates from the faculty handbook, and the opportunity to contest the evidence presented was before that agreed-upon forum.

The voluminous record includes, among other things: numerous complaints made against Dr. Ng over ten years; correspondence between Dr. Ng

and his supervisors; the UGC's and university president's recommendations; and multiple emails between the parties concerning student complaints of Dr. Ng's misconduct and his written responses to them. Dr. Ng essentially asks us to retry the merits of the tenure hearing on appeal. We decline to do so. We also decline to substitute our judgment for that of the Board in evaluating and weighing the evidence presented at Dr. Ng's tenure hearing. We conclude there was sufficient credible evidence in the record to support the Board's decision, and its actions were not arbitrary, capricious, or unreasonable. We discern no error in the trial court's order granting summary judgment for FDU.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0089-22

14